STATE OF NORTH CAROLINA v. WILLIE JONATHAN CROSS

No. 26

(Filed 14 November 1973)

1. Rape § 4— evidence of pregnancy resulting from rape — competency

The trial court in a rape case did not err in allowing the prosecutrix to testify that she became pregnant as a result of the rape allegedly committed by defendant since the testimony tended to show penetration, one of the elements of rape, and since the testimony was also competent to corroborate the testimony of the prosecutrix that a male person had carnally known and abused her.

2. Criminal Law §§ 34, 169— improper question — no prejudicial error

Though a question asked defendant's wife by the State with respect to defendant's commission of an assault not related to the alleged rape for which he was on trial was improper, the question was not so prejudicial as to require a new trial.

3. Criminal Law § 66— in-court identification of defendant — pretrial identification procedure — evidence admissible

The trial court in a rape case did not err in refusing to suppress the prosecutrix' in-court identification of defendant and in permitting testimony about the pretrial identification of defendant where the prosecutrix' identification of defendant as her assailant was based on her observation of defendant for approximately one and one-half hours at the time of the attack and where the pretrial identification procedures were not impermissibly suggestive.

APPEAL by defendant from Collier, J., at the 29 January 1973 Session of FORSYTH Superior Court.

On two indictments proper in form, defendant was tried and convicted of kidnapping and raping Cynthia Ann Beasley. Defendant appeals from judgments imposing consecutive life imprisonment sentences.

The evidence offered by the State tends to show that on 30 October 1972 Cynthia Ann Beasley was employed as a staff

nurse at the Baptist Hospital in Winston-Salem. Miss Beasley left the hospital at approximately 11:30 p.m. on that date and was walking toward her car when a black man approached her from behind, put his hand over her mouth, and while pointing a gun at her, told her not to scream or he would kill her. The man took Miss Beasley to her car and told her that he was from Brooklyn, New York, and that he was running from the police. He then forced her to drive him in and around Winston-Salem for about one and one-half hours. On two occasions during this time the man made Miss Beasley stop the car at dead-end streets, and he then forcibly and against her will had sexual intercourse with her. After threatening to kill Miss Beasley if she reported the incident and receiving assurances from her that she would not tell anyone, the man fled. Miss Beasley then drove back to her apartment and notified the police.

Miss Beasley described her assailant in detail to the police on the morning of 31 October 1972, and a composite drawing was made based on her description. This description included certain items of clothing worn by the man—a brown jacket, blue slacks, and boots. In an effort to identify her assailant, Miss Beasley viewed several hundred police photographs on several occasions. On 2 November 1972 she tentatively identified defendant as her assailant from a photograph, but told the police that she wanted to see another photograph of him since a shadow across defendant's face in that photograph prevented her making a positive identification. On the same day Miss Beasley viewed a "one-man lineup" consisting of one Ernest Floyd, a man whom the police suspected. Miss Beasley stated that this man was not her assailant. On 13 November 1972 Miss Beasley looked through another stack of police photographs, and at that time confirmed her 2 November 1972 identification by identifying two more photographs of defendant, one of which was a profile and the other a front view. Defendant's photograph with the shadow across the face was also in this stack, and Miss Beasley again said it was a picture of her assailant. On a later date Miss Beasley attended a lineup consisting of defendant and four other black males. There she identified defendant as her assailant. She again positively identified defendant at trial.

Reginald Hiawatha Hairston testified for the State. He stated that he was with defendant on the day of the alleged crimes, and that defendant said he had been to New York. Hairston also testified that on this date defendant was wearing a

brown jacket, blue slacks, and boots, and that defendant was "fooling with a gun."

Two doctors also testified for the State. They testified that on the morning after the alleged crimes they examined Miss Beasley and found spermatoza present within her vagina. Miss Beasley testified that she had not had sexual intercourse with any man since 30 October 1972, and that she became pregnant as a result of the rape.

Defendant testified in his own behalf. He admitted that he had been to Brooklyn, New York, during 1972. He also admitted that he had been with Hairston on 30 October 1972, and that he was wearing a brown jacket, blue slacks, and boots at that time. He denied, however, that he had a gun on that day. He further testified that he had never seen Miss Beasley before and that he did not rape her, and that on the night in question he was in a friend's house with a girl he later married, Rosalind Jackson, now Mrs. Rosalind Cross. He admitted on cross-examination that he had been convicted of several crimes and that the police were looking for him on the night of 30 October 1972.

Mrs. Rosalind Cross testified for defendant. She stated that she and defendant had been married on 23 December 1972 in the Forsyth County jail. She corroborated defendant's testimony about his presence in the friend's house on the night in question.

*Attorney General Robert Morgan and Deputy Attorney General Andrew A. Vanore, Jr., for the State.*

*Legal Aid Society of Forsyth County by Charles O. Peed, Jr., for defendant appellant.*

MOORE, Justice.

[1] Defendant first contends the trial court erred in permitting the prosecutrix to testify over objection that she became pregnant as the result of the rape. Defendant says this testimony was offered only to excite sympathy for the prosecutrix and to play upon the passions and prejudices of the jury.

Rape is the carnal knowledge of a female forcibly and against her will. *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225 (1969); *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44 (1967).

There must be penetration of the sexual organ of the female by the sexual organ of the male to constitute carnal knowledge in a legal sense, but the slightest penetration is sufficient. *State v. Sneeden,* 274 N.C. 498, 164 S.E. 2d 190 (1968). The testimony of the prosecutrix concerning her pregnancy tended to show penetration, one of the elements of rape. Defendant's plea of not guilty placed upon the State the burden of proving beyond a reasonable doubt all the essential elements of the offense charged. Hence, evidence tending to prove penetration, an essential element of the offense, was properly admitted. *State v. McNeil,* 277 N.C. 162, 176 S.E. 2d 732 (1970); *State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839 (1969); Annot., 62 A.L.R. 2d 1083 (1958), and cases therein cited. Such testimony was also competent to corroborate the testimony of the prosecutrix that a male person had carnally known and abused her. See *State v. Jones,* 249 N.C. 134, 105 S.E. 2d 513 (1958). Relevant testimony will not be excluded simply because it may tend to prejudice defendant or excite sympathy for the cause of the party who offers it. 1 Stansbury's N. C. Evidence, Brandis Rev. § 80, at 242 (1973). See *State v. Cox,* 280 N.C. 689, 187 S.E. 2d 1 (1972); *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971). Defendant's first assignment is overruled.

[2] Mrs. Rosalind Cross testified that she was living with defendant on the date of the alleged offenses, and that she married him thereafter. On cross-examination Mr. Thomas, an assistant solicitor, asked Mrs. Cross the following questions:

"Q. Were you living with him on the 28th day of October?

A. Yes.

MR. PEED (attorney for defendant): Objection.

COURT: Overruled.

Q. And that is the day he went into the girls' dormitory in the School of the Arts and assaulted a girl?

MR. PEED: Objection. Assumes facts not in evidence.

COURT: No.

MR. THOMAS: I have no further questions.

MR. PEED: That is all."

The question asked defendant's wife was not answered; defendant contends, however, that the question itself was of such prejudicial character as to constitute reversible error. Prior to his wife's testimony, defendant had testified and a similar but more explicit question concerning an assault on Denise Myers was asked him. Although he had previously admitted that he had been convicted of shoplifting, of two assaults, and of larceny of an automobile on four different occasions, he specifically denied that he had assaulted Denise Myers with intent to rape her. From the record it is not clear whether this is the same assault to which the assistant solicitor's question refers. If so, the question was improper since the State was bound by defendant's answer that he had not assaulted Denise Myers. *Pearce v. Barham,* 267 N.C. 707, 149 S.E. 2d 22 (1966) ; *State v. King,* 224 N.C. 329, 30 S.E. 2d 230 (1944) ; 1 Stansbury's N. C. Evidence, Brandis Rev. §§ 48, 111, at 139, 342 (1973). In any event we think the question asked defendant's wife was improper. We hold, however, that it was not so prejudicial as to require a new trial. "This Court has repeatedly held that in order to obtain an award for a new trial on appeal for error committed in a trial of the lower court, the appellant must show error positive and tangible, that has affected his rights substantially and not merely theoretically, and that a different result would have likely ensued." *State v. Cogdale,* 227 N.C. 59, 40 S.E. 2d 467 (1946). See also *State v. Beal,* 199 N.C. 278, 154 S.E. 604 (1930) ; 1 Stansbury's N. C. Evidence, Brandis Rev. § 9 (1973). In this case no such showing appears.

[3] Finally, defendant contends that the trial court erred in refusing to suppress the prosecutrix's in-court identification of defendant and in permitting testimony by the prosecutrix and a Winston-Salem police officer about the pretrial identification of defendant.

Upon defendant's objection, the trial court conducted a lengthy *voir dire* to determine the competency of the identification testimony. This was the proper procedure for the court to follow. *State v. Stepney,* 280 N.C. 306, 185 S.E. 2d 844 (1972) ; *State v. Accor* and *State v. Moore,* 277 N.C. 65, 175 S.E. 2d 583 (1970). During the *voir dire* the prosecutrix described in detail the identification procedures that the State had followed. She expressed certainty about her identification of defendant from three photographs and a five-man lineup. Her testimony concerning the identification procedures was cor-

roborated by R. A. Westmoreland of the Winston-Salem Police Department. Defendant offered no evidence on the *voir dire*. At the conclusion of the *voir dire,* the trial court found that the prosecutrix's identification of defendant as her assailant was based on her observation of defendant at the time of the attack and on her own independent recollection of defendant, and concluded that the constitutional requirements with respect to identification procedures prescribed by the United States Supreme Court and this Court had been followed.

Defendant challenges the pretrial identification as being impermissibly suggestive so that "a substantial likelihood of misidentification exists." His contention is set out in his brief as follows:

" . . . [A]ll the evidence tends to show a pattern of use of three photographs of defendant, culminating in a line-up on November 13th. The only reasonable inferences, are that the police have been unsatisfied with each successive identification of defendant, and the prosecutrix must have concluded that the police believed defendant was the culprit, as his photo kept reappearing and as he was ultimately the only person fitting her assailant's description at the line-up."

Because of the circumstances underlying prosecutrix's pretrial identification, defendant further contends the trial court should have suppressed the prosecutrix's later in-court identification of defendant.

In *Simmons v. United States,* 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968), the United States Supreme Court was asked to reverse a conviction in which the victims of a robbery identified the defendant from photographs shown to them by the police. In upholding the conviction, that Court stated:

" . . . [C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

In construing *Simmons* our Court in *State v. Knight,* 282 N.C. 220, 192 S.E. 2d 283 (1972), held:

"Factors to consider in applying the *Simmons* test are: '(1) The manner in which the pretrial identification was conducted; (2) the witness's prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification.' "

See also *United States v. Wade,* 388 U.S. 218, 18 L.Ed. 2d 1149, 87 S.Ct. 1926 (1967) ; *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970). "If a consideration of the total circumstances reveals pretrial identification procedures unnecessarily suggestive and conducive to irreparable mistaken identification, such procedures would manifestly offend fundamental standards of decency, fairness and justice and amount to a denial of due process of law." *State v. Rogers,* 275 N.C. 411, 426, 168 S.E. 2d 345, 354 (1969).

There is absolutely no evidence in the record to support a conclusion that the identification procedures followed in this case were "impermissibly suggestive," or were such "as to give rise to a very substantial likelihood of irreparable misidentification." The prosecutrix viewed several hundred police photographs on several occasions in the days following the attack made upon her. Apparently the police had no idea who her assailant was. The only *possible* instance of any police intimation about who the culprit might be was the "one-man lineup" that was conducted on the third day following the alleged crimes. There the prosecutrix viewed a man—not the defendant—whom the police suspected. She immediately said this man was not her assailant.

It is not disputed that the prosecutrix had ample opportunity to fully observe her assailant. She was with him for about one- and one-half hours, much of the time on brightly lighted streets. The record does not reflect any discrepancies between defendant's actual description and the description given by the prosecutrix to the police on which the composite drawing was based. Her description of the clothes he was wearing was corroborated by another witness who saw him on the day in question and by the defendant himself. Her initial identification

came only three days after the alleged crimes when she viewed defendant's photograph. This first photograph of defendant had a shadow across defendant's face, and she asked for a better photograph before making a positive identification. She confirmed her tentative identification eleven days later when she viewed two better photographs of defendant. Later she identified her assailant again when she attended a lineup consisting of defendant and four other black males. The totality of these circumstances surrounding the identification procedures followed by the police in this case requires us to conclude that there was no "substantial likelihood of irreparable misidentification." Therefore, the pretrial identification testimony was competent evidence. *State v. Miller,* 281 N.C. 70, 187 S.E. 2d 729 (1972).

In ruling that the prosecutrix's in-court identification testimony was admissible, the trial court found as a fact "that the identity of the defendant as her assailant was based on the observation of the defendant at the time of her attack and independent recollection of the defendant." This finding is fully supported by clear and convincing evidence and therefore is conclusive and must be upheld. *State v. Morris,* 279 N.C. 477, 183 S.E. 2d 634 (1971); *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966). The trial court's determination that the prosecutrix's in-court identification of defendant had an independent origin, together with our holding that the pretrial identification did not result from impermissibly suggestive identification procedures, renders the in-court identification testimony clearly admissible. See *State v. Knight, supra; State v. Accor* and *State v. Moore, supra; State v. Blackwell, supra; State v. Rogers, supra.* Defendant's motion to suppress the in-court identification was properly denied.

Defendant has had a fair trial, free from prejudicial error. The verdicts of the jury are fully supported by the evidence, and the judgments must therefore be upheld.

No error.