STATE OF NORTH CAROLINA v. WILLIAM FOSTER STANTON

No. 80A86

(Filed 4 March 1987)

### 1. Rape and Allied Offenses § 4.2— pregnancy, abortion, and lack of other sexual involvement—admissible

In a prosecution for first degree burglary and first degree rape, the trial court did not err by permitting the victim to testify on direct examination that she had become pregnant, had had an abortion subsequent to the rape, and that she was not having sexual intercourse with anyone else during that time. The determination of the fact of penetration, an essential element of rape, is made more probable by evidence of the subsequent pregnancy and abortion; the evidence of the abortion was nothing more than an unembellished, simple statement which would have little tendency to inflame the jury; and, notwithstanding defendant's failure to object, there is no authority which would prohibit a victim from willingly testifying as to the lack of sexual involvement for purposes of corroboration. N.C.G.S. 8C-1, Rules 403 and 412.

### 2. Criminal Law § 75.10— refusal to sign waiver of rights—admission not plain error

In a prosecution for burglary and rape, the disclosure of defendant's failure to sign a waiver form after he was given his rights did not rise to the level of plain error where the revelation came about as a result of an unresponsive answer and was not elicited by the prosecution; there was no indication that the State in any way attempted to cause the jury to derive any particular import from the unsigned waiver; there was no indication that the point was ever again raised during the trial or closing arguments; and in view of the other evidence against defendant.

### 3. Criminal Law § 77.2— statement by defendant—self-serving—not admissible

The trial court did not err in a prosecution for burglary and rape by refusing to allow defendant to cross-examine the arresting officer about whether defendant had made a statement to the officer regarding the attack on the victim where defendant's question was designed to elicit a simple yes or no answer; the witness was about to give his version of the statement; the prosecutor objected because the answer would be self-serving; and defendant did not renew his attempt to elicit the simple fact that defendant did or did not give a statement. Since defendant had not yet testified, the court was justified

in assuming that the answer would serve only a substantive rather than a corroborative purpose and might very well be self-serving.

Justice FRYE concurring in the result.

Chief Justice EXUM and Justice MITCHELL join in this concurring opinion.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment entered 17 September 1985, imposing a life sentence upon defendant's convictions of first-degree burglary and second-degree rape returned at the 16 September 1985 Criminal Session of Superior Court, ROBESON County.

On 8 July 1985, the Robeson County Grand Jury returned bills of indictment charging defendant with first-degree burglary and first-degree rape. The cases were joined for trial and were tried before *E. Lynn Johnson, Judge* presiding, and a jury. The jury returned verdicts of guilty of first-degree burglary and second-degree rape. The cases were consolidated for purposes of judgment, and defendant was sentenced to life imprisonment. Heard in the Supreme Court 8 December 1986.

*Lacy H. Thornburg, Attorney General, by James Wallace, Jr., Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Louis D. Bilionis, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

Defendant brings forward on appeal three issues, all relating to the admission of, or failure to admit, certain items of evidence. We find no error in defendant's trial and affirm his convictions and sentences.

The victim, Mary Jane Brown, returned to her apartment at Carolina Apartments in Maxton, North Carolina, at approximately 2:00 a.m. on the morning of 2 June 1985 following an all-day bus trip to King's Dominion, a recreational park in Virginia. She returned to Maxton at approximately 11:00 p.m. and stopped at her mother's to pick up one of her children. The other child spent the night at the grandmother's house. Upon reaching her apartment, she and the child took a bath and went to bed. The doors to her home were locked.

At approximately 4:45 a.m., while lying face down in her bed, she was awakened by the presence of someone on top of her,

beating her across her head and face and threatening to kill her if she moved. Her attacker was attempting to have sexual intercourse with her. After pleading with her attacker, she was permitted to turn over. He then held her down and had forcible vaginal intercourse with her against her will. It was after she was allowed to turn over that she recognized her attacker as the defendant, whom she had known previously. A light from the kitchen shone into the bedroom and permitted her to see defendant's face. The defendant had previously lived in the same mobile home park as the victim, and though she had never spoken with him, she had seen him "a lot." The forced intercourse lasted about five minutes, and defendant then left the apartment. Mrs. Brown's pocketbook had been moved, and $50.00 was missing.

Mrs. Brown gathered up her child and drove to her mother's and told her what had happened. Her mother went to the police station and told officers what had happened. An officer accompanied her mother back to her house and spoke with the victim. He then accompanied her to the hospital, where a rape kit was prepared.

Upon returning to her apartment from the hospital and the police station, Mrs. Brown found that the screen to a front window had been cut. Mrs. Brown gave the officers a statement concerning the attack and identified defendant as the man who had raped her.

At the trial, Mrs. Brown testified to the details of the attack and again identified defendant as her attacker. Over defendant's objection, Mrs. Brown testified that fourteen weeks after the rape, she found out that she was approximately fourteen weeks pregnant. She then testified that she had not had intercourse with anyone but defendant during that time frame. Also, over defendant's objection, she testified that she obtained an abortion.

Officer Andre McPhaul testified that he took Mrs. Brown's statement to the effect that defendant had raped her, that he took her to the hospital for the preparation of the rape kit, and that he had sent it to the State Bureau of Investigation in Raleigh for analysis. Officer McPhaul went to defendant's house and spoke with defendant and his wife. Defendant voluntarily agreed to accompany Officer McPhaul to police headquarters for questioning. McPhaul testified that he read defendant his *Miranda* rights

twice, but that defendant refused to sign the acknowledgment form.

No identifiable fingerprints were found in Mrs. Brown's apartment. SBI Agent Taub, a serology specialist, testified that semen was present in the rape kit swabs and that it originated from an AB secretor, a type which occurs in three percent of the nation's population. He testified that defendant's blood type was AB.

Maxton Police Chief Thompson testified that Mrs. Brown identified defendant at the police station on the morning of the attack as the man who raped her.

By his testimony, defendant denied any involvement. He offered alibi evidence through testimony of his wife, family members, and friends. He also offered the testimony of a neighbor of Mrs. Brown that she had seen a car pull up to Mrs. Brown's apartment on two occasions between 4:00 and 4:30 a.m. on 2 June 1985 and heard someone beating on her door.

[1] Defendant first argues that the trial judge committed reversible error by permitting the victim to testify, over objection, that she became pregnant and had an abortion subsequent to the rape. He also argues that it was plain error for the trial judge to permit the victim to testify, even in the absence of any objection, that she was not having sexual intercourse with anyone else during that time.

The testimony in question occurred during direct examination of Mrs. Brown by the assistant district attorney after she had testified as to the actual penetration. The transcript reveals the following exchange:

Q. Now, after June the 2d, did you find out at a later date that you were pregnant?

A. Yes.

MR. ROGERS: Objection, Your Honor.

THE COURT: Overruled. EXCEPTION NO. 1

Q. (By Mr. Carter:) When did you find out you were pregnant?

A. I'm not sure of the date.

Q. When you found out you were pregnant, do you know how many weeks or months you were pregnant?

A. Yes.

Q. How many weeks were you pregnant?

A. Fourteen.

Q. And did you calculate as to how many weeks that was after you had been assaulted by the defendant?

A. Yes.

Q. How many weeks was it?

A. Fourteen.

Q. Okay. As a result of finding out that you were pregnant and fourteen weeks pregnant, what, if anything, did you do?

MR. ROGERS: Objection, Your Honor.

THE COURT: Overruled. EXCEPTION NO. 2

THE WITNESS: I had an abortion.

[Q. (By Mr. Carter:) Now, during the time you were assaulted by the defendant, were you dating anyone on a regular basis?

A. No.

Q. Were you having sexual intercourse with anyone during that time?

A. No.] EXCEPTION NO. 3. NO OBJECTION STATED AT TRIAL

Defendant concedes the relevance of the evidence regarding the prosecutrix's pregnancy and abortion; he argues, however, that its probative value is far outweighed by its prejudicial effect. Defendant contends that evidence of the pregnancy and abortion added little if anything to the State's case because the evidence of the penetration was unequivocal. Defendant argues that this is precisely the sort of inflammatory evidence that Rule 403 of the North Carolina Rules of Evidence is calculated to exclude.

Rule 401 of our rules defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more prob-

able or less probable than it would be without the evidence." Unquestionably, the determination of the fact of penetration is made more probable by evidence of the subsequent pregnancy and abortion. Indeed, the defendant concedes as much. Rule 402 provides, in effect, that all "relevant evidence" is admissible unless it is made inadmissible by constitutional provision, legislative act, or any other Rule of Evidence. Defendant argues that Rule 403 is the rule which prohibits the admission of this evidence. Even prior to the adoption of the Rules of Evidence, our case law had long recognized that certain circumstances call for the exclusion of evidence which was of unquestioned relevance. *See* 1 Brandis on North Carolina Evidence § 80 (1982 & Supp. 1986), and cases cited therein. Rule 403 is the modern embodiment of that concept. Rule 403 provides as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We find nothing in Rule 403 that causes us to depart from our prior holdings that evidence merely disclosing a subsequent pregnancy is admissible as tending to prove penetration, an essential element of the crime of forcible rape. Our case of *State v. Cross*, 284 N.C. 174, 200 S.E. 2d 27 (1973), is dispositive of the issue:

> Defendant first contends the trial court erred in permitting the prosecutrix to testify over objection that she became pregnant as the result of the rape. Defendant says this testimony was offered only to excite sympathy for the prosecutrix and to play upon the passions and prejudices of the jury.
>
> Rape is the carnal knowledge of a female forcibly and against her will. *State v. Primes*, 275 N.C. 61, 165 S.E. 2d 225 (1969); *State v. Overman*, 269 N.C. 453, 153 S.E. 2d 44 (1967). There must be penetration of the sexual organ of the female by the sexual organ of the male to constitute carnal knowledge in a legal sense, but the slightest penetration is sufficient. *State v. Sneeden*, 274 N.C. 498, 164 S.E. 2d 190 (1968). The testimony of the prosecutrix concerning her pregnancy tended to show penetration, one of the elements of rape.

Defendant's plea of not guilty placed upon the State the burden of proving beyond a reasonable doubt all the essential elements of the offense charged. Hence, evidence tending to prove penetration, an essential element of the offense, was properly admitted. *State v. McNeil*, 277 N.C. 162, 176 S.E. 2d 732 (1970); *State v. Perry*, 275 N.C. 565, 169 S.E. 2d 839 (1969); Annot., 62 A.L.R. 2d 1083 (1958), and cases therein cited. Such testimony was also competent to corroborate the testimony of the prosecutrix that a male person had carnally known and abused her. See *State v. Jones*, 249 N.C. 134, 105 S.E. 2d 513 (1958).

*Cross*, 284 N.C. at 176-77, 200 S.E. 2d at 29-30.

Mrs. Brown's simple statement that she had an abortion served the purpose of corroborating both the fact of penetration and the fact of her pregnancy. The mere fact that an abortion took place is not so inflammatory as to render it inadmissible. Defendant cites *Sullivan v. Commonwealth*, 260 Ky. 471, 86 S.W. 2d 135 (1935), for the proposition that testimony concerning the abortion was so inflammatory, and of so little probative value, as to warrant a new trial. Besides observing that *Sullivan* was decided more than fifty years ago, we fail to find that decision persuasive. In *Sullivan*, evidence that a young girl had attempted an abortion by drinking turpentine was found to be too far removed from the issue of defendant's guilt. While we would agree that morbid representations concerning an attempted abortion might prove unduly prejudicial, the evidence here is nothing more than a simple statement that the victim discovered her pregnancy some fourteen weeks after the attack and that "I had an abortion." Such simple statements as these, otherwise unembellished, have little tendency to inflame a jury. Whether to exclude evidence under Rule 403 is a matter within the sound discretion of the trial judge, *State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430 (1986), and we conclude that the trial judge did not abuse his discretion in admitting into evidence Mrs. Brown's statements regarding her subsequent pregnancy and abortion.

Defendant next contends that the trial court erred in allowing into evidence the testimony of Mrs. Brown that she was not having sexual intercourse with anyone else at the time of the rape. For purposes of clarity, we repeat a portion of the tran-

script previously set forth in this opinion regarding the testimony by Mrs. Brown:

> [Q. (By Mr. Carter:) Now, during the time you were assaulted by the defendant, were you dating anyone on a regular basis?
>
> A. No.
>
> Q. Were you having sexual intercourse with anyone during that time?
>
> A. No.] EXCEPTION NO. 3 NO OBJECTION STATED AT TRIAL

Defendant contends that the admission of this evidence somehow violates Rule 412. With certain exceptions not pertinent here, Rule 412 is the embodiment of its predecessor, N.C.G.S. § 8-58.6 (repealed by 1983 N.C. Sess. Laws (Regular Sess. 1984) ch. 1037, § 2 (effective 1 July 1984)), a part of what was commonly referred to as the Rape Shield Law. Defendant's failure to object at trial aside, we find no error in the admission of this evidence. Defendant cites no authority contrary to either Rule 412 or its predecessor statute, N.C.G.S. § 8-58.6, to prohibit a victim from willingly testifying as to the lack of sexual involvement for purposes of corroboration, and we decline to so construe it. It would strain credulity for this Court to hold that, while a victim may testify to the details of her rape and corroborate that testimony with further testimony concerning her pregnancy and subsequent abortion, she may not testify as to the lack of sexual involvement with anyone except the defendant and thereby fail to fix responsibility for the pregnancy on the defendant.

[2] Defendant next contends that certain testimony of Officer McPhaul revealing that defendant refused to sign a waiver form following receipt of *Miranda* warnings constituted "plain error" entitling him to a new trial. We disagree.

On direct examination by the assistant district attorney, Officer McPhaul was being examined concerning his contact with the defendant at the defendant's residence in the early morning hours of 2 June 1985, approximately thirty minutes after the rape in question had occurred. Toward the end of his direct examination, Officer McPhaul testified that he told defendant that he was not under arrest and that he wanted to talk to him downtown. Upon being asked if he questioned the defendant at any time, the following exchange took place:

Q. Did you at any time question the defendant?

A. Okay. I told him I wanted to talk to him. If he would, you know, come downtown. I asked his wife how long has he — was he home Said he had just got there.

Q. He had just gotten there when you picked him up?

A. Yes.

[Q. Okay. Did you advise him of any rights?

A. Yes. I read the rights form to him twice, and he refused to sign it.

Q. He refused to sign it?

A. Yes, sir. I have a copy of the form.] NO OBJECTION STATED AT TRIAL EXCEPTION NO. 4

MR. CARTER: I have no further questions, Your Honor.

THE COURT: You may cross examine.

As the transcript indicates, defense counsel did not object to the question or move to strike that portion of Officer McPhaul's answer which was unresponsive to the question and about which defendant now complains. A failure to except or object to errors at trial constitutes a waiver of the right to assert the alleged error on appeal. For purposes of our analysis of defendant's contention, we assume, without deciding, that the failure to exclude the witness' answer was error. As the record here fails to reveal any manner in which the defendant is entitled to an exception by rule of law, this Court's role is limited to consideration of whether defendant has carried his burden of showing "plain error." In our recent case of *State v. Walker*, 316 N.C. 33, 340 S.E. 2d 80 (1986), we reiterated our position,[1] that we will apply the plain error rule in only the most exceptional circumstances:

---

1. In *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983), we said:

   "[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of

State v. Stanton

The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. *State v. Odom*, 307 N.C. at 661, 300 S.E. 2d at 378-79. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. *State v. Black*, 308 N.C. at 741, 303 S.E. 2d at 806-07. Therefore, the test for "plain error" places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection. *Cf.* N.C.G.S. § 15A-1443(c) (defendant not prejudiced by error resulting from his own conduct).

*State v. Walker*, 316 N.C. 33, 39, 340 S.E. 2d 80, 83-84 (1986).

Our review of the entire record leads us to conclude that the disclosure of defendant's refusal to sign a waiver form after he was given his *Miranda* rights does not rise to the level of plain error. The revelation came about as a result of an answer by the witness that was unresponsive to the prosecutor's question. It cannot be said to have been elicited by the prosecution. There is no indication that the State in any way attempted to cause the jury to derive any particular import from the fact that the waiver form was not signed. Nor is there any indication in the record that the point was ever raised again at any time during the remainder of the trial or during closing argument. *See United States v. Muscarella*, 585 F. 2d 242 (7th Cir. 1978), and *State v. Harper*, 637 S.W. 2d 342 (Mo. App. 1982). In view of the victim's opportunity to observe her attacker; her immediate, unhesitating,

---

justice or in the denial to appellant of a fair trial" ' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.' "

*Id.* at 740-41, 303 S.E. 2d at 806-07 (quoting with approval *United States v. McCaskill*, 676 F. 2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L.Ed. 2d 513 (1982) ).

and repeated identification of defendant as her attacker, a man whom she knew and had seen "a lot"; and the serology evidence, we cannot conclude that absent this unresponsive statement revealing to the jury that the defendant refused to sign the waiver form after he had been informed of his *Miranda* rights, the jury would probably have reached a different verdict. The defendant has failed to carry his burden of showing "plain error."

[3] Finally, defendant argues that the trial judge committed reversible error in refusing to allow the defendant's counsel to cross-examine Officer McPhaul concerning whether defendant actually made a statement to the witness concerning the attack on Mrs. Brown. Defendant argues that the prosecution "opened the door" by introducing evidence of defendant's post-arrest silence through Officer McPhaul's answer that defendant refused to sign the waiver form.

Defense counsel attempted to cross-examine Officer McPhaul to show that defendant had indeed made a statement to the authorities; however, the trial judge would not allow the question. As the basis for this argument, defendant cites the following exchange:

Q. Okay. Did Mr. Stanton give you a statement about this matter?

A. He told me —

MR. CARTER: Objection as self-serving at this point.

THE COURT: Sustained at this point.

THE WITNESS: Well, he told me —

THE COURT: Sustained. EXCEPTION NO. 5

At the outset, it is to be noted that the defense attorney's question was designed to elicit a simple "yes" or "no" answer, but the witness in response was about to give his version of the contents of the statement. The prosecutor, recognizing this, objected — not to the fact that the witness responded, but to the fact that the response would be self-serving, as it was about to reveal the contents of the statement. At this point, the defendant did not renew his attempt to elicit the simple fact that defendant did or did not give an answer, if indeed that was the purpose of the

question. In view of the witness' attempt to give his version of the contents of the statement, the objection was properly sustained. Since the defendant had not yet testified, the court was justified in assuming that the answer would serve only a substantive, as opposed to a corroborative, purpose and might very well be "self-serving." The phrase "self-serving" does not describe an independent grounds for exclusion but rather is merely a convenient term to characterize a particular form of otherwise inadmissible hearsay. 1 Brandis on North Carolina Evidence § 140 (1982 & Supp. 1986). Testimony of a self-serving declaration made by a defendant following an alleged crime is incompetent as substantive evidence. *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976), *reconsideration denied*, 293 N.C. 259, 243 S.E. 2d 143 (1977); *State v. Chapman*, 221 N.C. 157, 19 S.E. 2d 250 (1942). Since the defendant failed to get Officer McPhaul's proposed answer into the record for appellate review, any assertion to the contrary is not supported by the record.

In defendant's trial and sentencing, we find

No error.

Justice FRYE concurring in the result.

I agree with the Court's ultimate decision finding no error in defendant's trial and sentencing. I write only to express my concern with the Court's treatment of defendant's contention that it was plain error for the trial judge to permit the victim to testify, even in the absence of any objection, that she was not having sexual intercourse with anyone else during the time of the rape in question. The Court holds that admission of this evidence was not error. I am not convinced.

I believe that Rule 412 of the North Carolina Rules of Evidence, properly construed, makes this type of evidence irrelevant to any issue in this case and its admission improper if properly objected to. Under the circumstances of this case, however, the admission of this evidence was clearly not error of the magnitude required for application of the plain error rule so as to award defendant a new trial. *See State v. Walker*, 316 N.C. 33, 340 S.E. 2d 80 (1986); *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983).

Rule 412 of the North Carolina Rules of Evidence provides that with the exception of sexual behavior between the complainant and the defendant and three other exceptions not relevant to this case, "the sexual behavior of the complainant is irrelevant to any issue in the prosecution . . . ." N.C.G.S. § 8C-1, Rule 412(b) (1986). Sexual behavior is defined as "sexual activity of the complainant other than the sexual act which is at issue in the indictment on trial." N.C.G.S. § 8C-1, Rule 412(a) (1986). While it may be argued that the testimony in question relates to a lack of sexual activity rather than sexual activity, I believe that at least one purpose of the rule is to remove from the prosecution of sex offense cases the question of the prosecutrix's sexual activity or lack thereof with persons other than the defendant. Once the complaining witness is permitted to testify, as here, that she was neither dating anyone on a regular basis nor having sexual intercourse with anyone during that time, the door is open for defendant to make an issue of her sexual behavior. This, in my opinion, is what Rule 412 attempts to prevent.

Chief Justice EXUM and Justice MITCHELL join in this concurring opinion.