# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

LOVELL CHARLES SHARPE,

        Defendant-Appellee.

FOR PUBLICATION
March 16, 2017
9:00 a.m.

No. 332879
Wayne Circuit Court
LC No. 16-001606-01-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LOVELL CHARLES SHARPE,

        Defendant-Appellant.

No. 333872
Wayne Circuit Court
LC No. 16-001606-01-FC

Before: RIORDAN, P.J., and METER and FORT HOOD, JJ.

RIORDAN, J.

In these consolidated appeals, the trial court issued an order[1] granting in part and denying in part the prosecution's motion to admit evidence concerning a criminal sexual conduct victim's pregnancy, abortion, and lack of other sexual partners. In its ruling, the court held that references to the complainant's abortion and lack of other sexual partners were inadmissible, but references to the complainant's pregnancy were admissible.

---

[1] The parties agree that the trial court issued two orders with regard to the prosecution's motion, but the court intended for the parties to rely on the more detailed order, which consists of the court's entire ruling.

-1-

In Docket No. 332879, the prosecution filed an application for leave to appeal, seeking to challenge the trial court's order to the extent that the prosecution's motion was denied. In Docket No. 333872, defendant filed a delayed application for leave to appeal, seeking to challenge the order to the extent that the prosecution's motion was granted. We granted both applications and consolidated the appeals.[2] We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from several incidents of criminal sexual conduct that defendant allegedly committed against the complainant, DM, when she was 13 or 14 years old. Defendant has been charged with first-degree criminal sexual conduct, MCL 750.520b; third-degree criminal sexual conduct, MCL 750.520d(1)(a); and fourth-degree criminal sexual conduct, MCL 750.520e.

At the preliminary examination, the complainant described two incidents of abuse by defendant that allegedly occurred in late 2013 or 2014. Defendant was previously in a relationship with DM's mother, and he fathered two of DM's half-siblings. The first incident occurred when defendant stayed with DM and her siblings while DM's mother was hospitalized. DM alleged that defendant made sexual contact with her, consisting of vaginal penetration as well as other touching. A second incident of abuse allegedly occurred at defendant's home, which, again, included vaginal penetration, among other things.

In October 2014, DM went to Henry Ford Hospital after her mother received a letter indicating that DM had an abnormal test result and needed to see the doctor again. At that time, DM underwent a pregnancy test, which came back positive. DM had not been showing any signs of pregnancy, and she and her mother were unaware that she was pregnant before they received the test results. Before she went to the hospital, DM was unaware of how a woman became pregnant, and Henry Ford staff had to explain the process to her.

DM's mother told defendant about the pregnancy, and they agreed that DM needed to get an abortion. Defendant gave DM's mother money to pay for half the cost of the abortion, with no expectation of repayment. DM then underwent an abortion on November 2014.

For several months, DM refused to tell her mother how she became pregnant. In April 2015, after ending her relationship with defendant, DM's mother again asked DM how she had become pregnant. DM then disclosed defendant's alleged sexual abuse.

At the preliminary examination, DM testified that she did not have any boyfriends during the year that she was 14, and no one else had penetrated her. DM's mother provided similar testimony, stating that she had no reason to believe that DM was sexually active with anyone other than defendant.

---

[2] *People v Sharpe*, unpublished order of the Court of Appeals, entered September 2, 2016 (Docket Nos. 332879 and 333872).

After defendant was bound over for trial, the prosecution filed a request to pierce the rape shield at trial. The prosecution first requested that the trial court admit evidence that defendant was the only person with whom DM had sexual contact between the incidents giving rise to defendant's charges and her abortion. The prosecution argued that this would corroborate DM's account of the sexual assault, and help the jury to decide whether defendant penetrated and impregnated her, and that the evidence would be admissible under the exceptions in MCL 750.520j and MRE 404(a)(3) as evidence regarding the source or origin of semen, pregnancy, or disease. The defense argued that evidence concerning DM's virginity is inadmissible under *People v Bone*, 230 Mich App 699; 584 NW2d 760 (1998), and that the evidence of her pregnancy and abortion is not relevant. Rather, it contended, the evidence regarding DM's virginity, pregnancy, and abortion is extremely prejudicial. Accordingly, defendant asked the court to preclude any mention of DM's virginity, pregnancy, and abortion at trial.

The court initially ruled:

> Well I know from my experience that the issue in this particular case is gonna be the credibility of the witness. In this particular case, we're dealing with a 14-year-old teenager.

> It would be helpful to have the DNA from the aborted fetus. Because if we had that DNA, what if that DNA didn't come back to the defendant? Then that would mean that possibly she was having consensual sex maybe with someone her own age. We don't know. And we won't know because the fetus was not preserved for DNA purposes.

> So I have to agree with the defense that the prejudicial nature of the proposed evidence outweighs the probative value in this case, and I'm not gonna allow it.

Later in the hearing, the court provided clarification of its ruling:

> For clarity, for the record, I will allow the prosecutor to ask the complainant whether or not she got pregnant during the time that she was allegedly sexually active with the defendant. However, I will not allow evidence in regards to the abortion or her sexual intercourse with no other partners.

> \* \* \*

> The Court's gonna preclude evidence and argument in regard to the abortion and other sexual partners or lack of prior sexual activity by the complainant, and that's pursuant to MRE 404(a)3 [sic].

Consistent with its ruling on the record, the trial court entered an order granting the prosecution's motion in part by allowing evidence of DM's pregnancy and denying the motion in part by excluding evidence of DM's abortion and lack of other sexual partners.

## II. STANDARD OF REVIEW

-3-

We review a trial court's decision to admit evidence for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010); *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). An abuse of discretion occurs if the trial court's decision "is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). In general, there is no abuse of discretion when the trial court's decision involves a close evidentiary question. *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000). "When the decision involves a preliminary question of law, . . . such as whether a rule of evidence precludes admission, we review the question de novo." *Mardlin*, 478 Mich at 614.

The rules of statutory construction apply equally to the construction of court rules. *People v Williams*, 483 Mich 226, 232; 769 NW2d 605 (2009).

> When construing a statute, our primary goal is to ascertain and give effect to the intent of the Legislature. To do so, we begin by examining the language of the statute. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and the statute is enforced as written. Stated differently, a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent. [*People v Phillips*, 469 Mich 390, 395; 666 NW2d 65 (2003) (quotation marks and citations omitted).]

## III. LEGAL BACKGROUND

These consolidated appeals implicate the same statute and court rule. MRE 404(a)(3) provides:

> (a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> * * *
>
> (3) *Character of alleged victim of sexual conduct crime*. In a prosecution for criminal sexual conduct, evidence of the alleged victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity, showing the source or origin of semen, pregnancy, or disease[.]

Similarly, MCL 750.520j, known as the rape-shield statute, states:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

The evidentiary rule differs from the statute in that the court rule generally addresses the admission of *character* evidence while the statute deals with the admission of evidence dealing with instances of a victim's sexual *conduct*. Compare MRE 404(a)(3) with MCL 750.520j. However, MCL 750.520j and MRE 404(a)(3) permit the same types of evidence: (1) evidence of the victim's past sexual conduct with the "actor," under MCL 750.520j, or "the defendant," under MRE 404(a)(3), and (2) evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease. The second exception is not limited to sexual activity with the defendant. Instead, it encompasses evidence of sexual activity, even if unrelated to the defendant, if that sexual activity shows the source or origin of semen, pregnancy, or disease.

"The rape-shield law, with certain specific exceptions, was designed to exclude evidence of the victim's sexual conduct with persons *other than defendant*." *People v Arenda*, 416 Mich 1, 10; 330 NW2d 814 (1982) (emphasis added). As we explained in *People v Duenaz*, 306 Mich App 85, 92; 854 NW2d 531 (2014):

> The [rape shield] statute was enacted to prohibit inquiry into a victim's prior sexual encounters, which were historically used by defendants charged with CSC involving an adult in an effort to prove the defense of consent. The statute reflects a legislative policy determination that sexual conduct or reputation regarding sexual conduct as evidence of character and for impeachment, while perhaps logically relevant, is not legally relevant. Although consent is not a relevant defense to a CSC charge involving an underage minor, Michigan courts have applied the rape-shield statute in cases involving child victims. [Citations omitted.]

However, the statute does not bar "testimony regarding sexual subjects involving the complainant" if "such testimony falls outside the scope of the statute." *People v Ivers*, 459 Mich 320, 328; 587 NW2d 10 (1998).

IV. DOCKET NO. 333872

Defendant contends that the trial court abused its discretion by ruling that the prosecution could elicit testimony from DM that she had become pregnant as a result of the sexual assault perpetrated by defendant. We disagree.

Under MRE 402, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, [the Rules of Evidence], or other rules adopted by the Supreme Court." Defendant contends that "[e]vidence regarding complainant's pregnancy is barred by MRE 404(a)(3) as evidence of the victim's 'past sexual conduct' " under *Bone*, 230 Mich App 699. Defendant also argues that if evidence of the victim's pregnancy is admitted without DNA or forensic evidence that he caused the pregnancy, he "will suffer from the unfair appeal to the jurors' sense that complainant should be believed and that she is deserving of additional sympathy." The prosecution, however, contends that evidence that the victim became pregnant while she was sexually active with defendant is admissible under MRE 404(a)(3), which allows the admission of evidence concerning specific instances of sexual activity showing the source of pregnancy.

The trial court correctly determined that evidence regarding the complainant's pregnancy was admissible. In analyzing this issue, the parties focus on MRE 404(a)(3). MRE 404(a) pertains to "[e]vidence of a person's character or trait" to prove "action in conformity therewith on a particular occasion . . . ." In general, under MRE 404(a), evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity with that character on a particular occasion. *Bone*, 230 Mich App at 701. In a prosecution for criminal sexual conduct, evidence of the victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity are admissible to show the source of semen, pregnancy, or disease. MRE 404(a)(3); *Bone*, 230 Mich App at 702. Here, however, the prosecutor did not seek to introduce evidence of the victim's pregnancy to prove that she acted in conformity with that character when the incidents allegedly occurred. See MRE 404(a)(3). Stated differently, the prosecution did not seek the admission of the evidence related to the pregnancy to show that DM had a particular character trait, in accordance with which she acted during the alleged instances of sexual conduct. Thus, because the complainant's pregnancy is not character evidence, and is not being offered to prove that the complainant "acted in conformity therewith," it is not precluded by MRE 404(a).

The trial court properly concluded that the prosecution could present evidence of the complainant's pregnancy because such evidence is not prohibited under MCL 750.520j(1). Again, unless otherwise precluded, "[a]ll relevant evidence is admissible." MRE 402. Relatedly, "the touchstone of the rape-shield statute is relevance. In providing two narrow exceptions to the exclusionary rule, the Legislature premised both exceptions on the threshold determination that the proposed evidence is 'material to a fact at issue.' " *People v Adair*, 452 Mich 473, 482; 550 NW2d 505 (1996), quoting MCL 750.520j(1). The record clearly shows that the pregnancy is relevant to corroborate DM's account of vaginal penetration. See MRE 401 (defining relevance); *People v Borowski*, 330 Mich 120, 125-126; 47 NW2d 42 (1951) (stating that evidence that the complainant became pregnant and gave birth was admissible as evidence of intercourse). The evidence also is relevant under the facts of this case to explain DM's delay in reporting defendant's alleged sexual assault. She did not disclose the sexual assault until after she was found to be pregnant and later questioned by her mother regarding the source of the pregnancy. While evidence of the pregnancy falls within the categories of excluded evidence

under the statute as evidence of a specific instance of the victim's sexual conduct, it is clearly admissible under the statutory exception for "[e]vidence of the victim's past sexual conduct with the actor."[3] MCL 750.520j(1).

We reject defendant's claim that the pregnancy-related evidence is inadmissible because it is impermissibly prejudicial under MCL 750.520j based on the fact that there is no alternative DNA or other forensic evidence available to show parentage. A trial court must exclude evidence that is material to a fact in issue and that otherwise fulfills the requirements under the rape-shield statute if the "inflammatory or prejudicial nature" of the evidence "outweigh[s] its probative value." MCL 750.520j(1).[4] Defendant mischaracterizes the probative and prejudicial value of the evidence at issue. A positive pregnancy test is highly probative because it provides objective proof that corroborates the complainant's claims that she was vaginally penetrated by defendant. With the evidence of the pregnancy, the proof of defendant's guilt rests on more than a one-on-one credibility contest. We fail to see how this evidence is unduly prejudicial for the reasons that defendant states. Further, as discussed later in this opinion, DM's testimony that defendant was the only person with whom she had sexual contact is admissible and has the same type of probative indicia as would DNA or forensic evidence from the aborted child.

Thus, the trial court properly admitted evidence of DM's pregnancy, regardless of the lack of DNA or other forensic evidence that defendant was the father of the child.

## V. DOCKET NO. 332879

The prosecution argues that the trial court abused its discretion when it ruled that the prosecution could not elicit testimony from DM that her only sexual contact was with defendant and evidence concerning her abortion. We agree.

## A. OTHER SEXUAL PARTNERS

The trial court relied on MRE 404(a) in excluding evidence of DM's lack of other sexual partners. Again, under MRE 404(a), evidence of a person's character or trait of character is generally inadmissible for the purpose of proving action in conformity with that character on a

---

[3] For the reasons discussed later in this opinion, we conclude that the victim's testimony that her only sexual contact was with defendant is admissible. Thus, evidence of her pregnancy constitutes "[e]vidence of the victim's past sexual conduct with the actor." MCL 750.520j(1)(a).

[4] The standard for excluding evidence on the basis of prejudice is more stringent under MCL MCL 750.520j than under MRE 403, which provides, "Although relevant, evidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." (Emphasis added.) See *Adair*, 452 Mich at 481 (comparing the prejudice-related inquiry under MRE 403 and MCL 750.520j(1) and recognizing that the rape-shield statute reflects the same "evidentiary postulate, but with a significant modification").

particular occasion. However, in a prosecution for criminal sexual conduct, evidence of the victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity are admissible to show the source of semen, pregnancy, or disease. MRE 404(a)(3); *Bone*, 230 Mich App at 701-702. In *Bone*, 230 Mich App at 702-704, this Court held that the defendant's right to a fair trial was violated by the prosecutor's repeated references to the complainant's virginity as circumstantial proof that the victim did not consent to the sexual conduct at issue. Specifically, the *Bone* Court held, "We interpret MRE 404(a)(3) to preclude the use of evidence of a victim's virginity as circumstantial proof of the victim's current unwillingness to consent to a particular sexual act." *Bone*, 230 Mich App at 702 (footnotes omitted). However, it is significant that the Court noted, immediately after stating its interpretation of the court rule, that "evidence introduced for some other relevant purpose does not become inadmissible merely because it tends to show that the victim was a virgin." *Bone*, 230 Mich App at 702 n 3. It is axiomatic that evidence that is inadmissible for one purpose may nonetheless be admissible for another purpose. *Sabin*, 463 Mich at 56.

Here, the prosecution did not seek to introduce evidence of the complainant's lack of sexual activity with men other than defendant to prove that the victim acted in conformity with that character when the incidents of defendant's abuse allegedly occurred. See MRE 404(a)(3). For example, the prosecution did not request admission of the evidence to show that the complainant's previous virginity supported an alleged lack of consent,[5] or that she regularly got pregnant and then had abortions. Instead, the prosecutor sought admission of evidence concerning the victim's lack of other sexual partners to substantiate her claim, and prove by the process of elimination, that she was, in fact, sexually penetrated and impregnated by defendant. Accordingly, the evidence concerning the complainant's virginity was outside the scope of prohibited evidence under MRE 404(a)(3) given its purpose for admission, and the trial court erred in relying on MRE 404(a)(3) as a basis for excluding the evidence.[6]

Further, this evidence is not prohibited under MCL 750.520j(1). The plain statutory language does not bar evidence concerning a victim's *lack* of specific instances of sexual conduct.[7] See *Phillips*, 469 Mich at 395. Nevertheless, even if evidence of DM's virginity arguably refers to "specific instances of the victim's sexual conduct," by essentially constituting the inverse of sexual activity, the statute permits "[e]vidence of specific instances of sexual activity showing the origin of . . . pregnancy." MCL 750.520j(1). "Again, the touchstone of the

---

[5] Consent is not an issue in this case given the victim's age. See MCL 750.520b(1)(b); MCL 750.520d(1)(a); MCL 750.520e(1)(a).

[6] Even if the proposed testimony was within the scope of MRE 404(a)(3), the evidence is being offered for a proper purpose for admission under both MRE 404(a)(3) and MCL 750.520j(1) as "evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease[.]" Accordingly, the subsequent analysis concerning MCL 750.520j would be equally applicable if the evidence falls within the scope of MRE 404(a)(3).

[7] Notably, *Bone*, 230 Mich App at 701-704, was decided under MRE 404(a)(3), not MCL 750.520j.

rape-shield statute is relevance.  In providing two narrow exceptions to the exclusionary rule, the Legislature premised both exceptions on the threshold determination that the proposed evidence is 'material to a fact at issue.' "  *Adair*, 452 Mich at 482, quoting MCL 750.520j(1).  As previously discussed, the trial court properly ruled that evidence of DM's pregnancy is admissible at trial.

Given the evidence of DM's pregnancy, her insistence that she never had sexual relations with anyone except defendant is highly relevant to her claim that defendant vaginally penetrated and impregnated her and, accordingly, committed the charged offenses.  Since MCL 750.520j(1)(b) permits evidence of specific instances of sexual activity to show the origin of a complainant's pregnancy, it is only reasonable to conclude that DM should be permitted to testify, consistent with her claim that defendant was the person whose sexual activity was the "origin" of her pregnancy, that there is no other possible source or "origin" given the fact that no one but defendant sexually penetrated her.

Additionally, this evidence is not inadmissible based on its potentially inflammatory or prejudicial effect.  See MRE 403; MCL 750.520j(1).  The objective evidence of DM's pregnancy and evidence of DM's lack of sexual partners is highly probative to the issue of whether defendant did, in fact, vaginally penetrate the victim.  See *People v Mills*, 450 Mich 61, 67; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995) (discussing the probative value of evidence).  Moreover, since the testimony at issue is DM's *lack* of sexual partners, there is, at most, minimal prejudice associated with the admission of this testimony, especially given the purpose of the rape-shield statute, see *Adair*, 452 Mich at 480; *Arenda*, 416 Mich at 10, and the purpose of the evidence in this case, cf. *Bone*, 230 Mich App at 703-704.  Under the circumstances of the instant case, the evidence only is prejudicial to the extent that this evidence makes more likely the fact that defendant actually committed the offenses, and "[r]elevant evidence is inherently prejudicial . . . ."  *Mills*, 450 Mich at 75.  We find no basis for concluding that the evidence would have an inflammatory or prejudicial effect that would outweigh its probative value.  See MRE 403; MCL 750.520j.

Therefore, the trial court's refusal to allow the prosecutor to question the complainant regarding whether she had sexual relations with anyone other than defendant was outside the range of reasonable and principled outcomes.  See *Orr*, 275 Mich App at 588-589; cf. *Bone*, 230 Mich App at 702-704, 702 n 3.[8]

---

[8] We find persuasive the reasoning in *State v Stanton*, 319 NC 180, 187; 353 SE2d 385 (1987), which considered evidence strikingly similar to that at issue in this case:

Defendant contends that the admission of this evidence [indicating that the victim was not dating or having sexual intercourse with anyone else on a regular basis at the time of the rape] somehow violates Rule 412.  With certain exceptions not pertinent here, Rule 412 is the embodiment of its predecessor, N.C.G.S. § 8–58.6 (repealed by 1983 N.C.Sess.Laws (Regular Sess.1984) ch. 1037, § 2 (effective 1 July 1984)), a part of what was commonly referred to as the Rape Shield Law.

## B. ABORTION EVIDENCE

We also agree with the prosecution that the trial court erred when it concluded that the prosecution may not present at trial any evidence of the complainant's abortion.

Again, all relevant evidence is admissible unless it is otherwise prohibited by the Rules of Evidence or other law. MRE 402. The trial court erroneously concluded that evidence of the abortion was barred by MRE 404(a)(3). The circumstances surrounding the victim's abortion are not character evidence, and are not being offered to prove action in conformity with DM's character. While evidence of the abortion would constitute "[e]vidence of specific instances of the victim's sexual conduct" prohibited under MCL 750.520j(1),[9] it falls within the exception for evidence of the victim's past sexual conduct with the actor under MCL 750.520j(1)(a) by providing further objective evidence that DM was, in fact, pregnant, which necessarily resulted from defendant's alleged vaginal penetration of her.

Contrary to defendant's claims, the record shows that evidence regarding DM's abortion is highly relevant to the charges against him, especially in the context of this case. See MRE 401; MRE 402. Evidence of DM's pregnancy and the subsequent abortion are directly probative of a material fact at issue, *i.e.*, whether defendant engaged in an act of sexual penetration with the complainant. See MCL 750.520b(1)(b); MCL 750.520d(1)(a). We are persuaded by the court's reasoning in *State v Stanton*, 319 NC 180, 186; 353 SE2d 385 (1987), in holding that the trial court did not abuse its discretion in admitting evidence of the complainant's pregnancy and abortion: "[The victim's] simple statement that she had an abortion served the purpose of corroborating both the fact of penetration and the fact of her pregnancy." Evidence of DM's abortion is also significant in this case given her mother's testimony that defendant paid for half of the abortion, and that he had no expectation of repayment.[10] A jury could reasonably infer,

---

Defendant's failure to object at trial aside, we find no error in the admission of this evidence. Defendant cites no authority contrary to either Rule 412 or its predecessor statute, N.C.G.S. § 8–58.6, to prohibit a victim from willingly testifying as to the lack of sexual involvement for purposes of corroboration, and we decline to so construe it. It would strain credulity for this Court to hold that, while a victim may testify to the details of her rape and corroborate that testimony with further testimony concerning her pregnancy and subsequent abortion, she may not testify as to the lack of sexual involvement with anyone except the defendant and thereby fail to fix responsibility for the pregnancy on the defendant.

[9] Cf. *Commonwealth v Weber*, 549 Pa 430, 437; 701 A2d 531 (1997) ("The Rape Shield Law applies to evidence concerning a victim's abortion because it necessarily implicates past sexual conduct."); *Razo v State*, 431 NE2d 550, 554-555 (Ind Ct App, 1982) (stating, with regard to a now-repealed rape shield statute, that "[a] pregnancy which has been aborted can only be the result of 'past sexual conduct' ") (footnote omitted).

[10] Although defendant's statements themselves were not admitted through the testimony of DM's mother at the preliminary examination, defendant's statements regarding the abortion would be

from defendant's financial contribution, a consciousness of guilt, or a desire to dispose of the "evidence" because the child's birth could lead to the conclusion that he committed the sexual assault that caused the pregnancy. Cf. *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008) ("A rational jury could have also inferred defendant's consciousness of guilt from evidence that defendant wished to have the victim's body immediately cremated. Defendant's desire to have the body cremated could be viewed as an effort to destroy evidence of the crime of murder, thereby showing a consciousness of guilt.").[11]

Because of its significant probative value, we disagree that evidence concerning the victim's abortion is inadmissible because it would be impermissibly prejudicial or it would improperly appeal to the jury's sympathy. See MCL 750.520j(1) (stating that evidence permitted under the statute may only be admitted if "its inflammatory or prejudicial nature does not outweigh its probative value."). Given the widespread and unfortunate acceptance of abortion in today's society, we again are persuaded by the court's reasoning in *Stanton*, 319 NC at 186: "The mere fact that an abortion took place is not so inflammatory as to render it inadmissible." Likewise, there is no basis for concluding that the fact that an abortion took place will appeal to a jury's sympathies.

Therefore, given the high probative value of the evidence, the trial court's exclusion of evidence related to DM's abortion was outside the range of principled outcomes. See *Orr*, 275 Mich App at 588-589.

## VI. CONCLUSION

All of the evidence proffered by the prosecution is admissible. The trial court erred in holding otherwise and shall permit the admission of this evidence at defendant's trial.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

admissible through her testimony as the statement of a party opponent. MRE 801 (stating that a party's own statement, if offered against the party, is nonhearsay).

[11] We also agree with the prosecution that evidence concerning DM's abortion could be somewhat relevant, given the admission of evidence of DM's pregnancy, to address the lack of conclusive DNA or forensic evidence showing that defendant was the father of the child or fetus related to DM's pregnancy. Although we recognize that a stipulation or jury instruction could easily address this purpose for admission without mentioning the abortion, we believe that the evidence of the abortion is highly relevant for the reasons previously discussed.