PRZYBYLA, Plaintiff-Respondent, v. PRZYBYLA,
Defendant-Appellant.

Court of Appeals

*No. 77–584. Argued November 15, 1978.—*
*Decided December 27, 1978.*
(Also reported in 275 N.W.2d 112.)

For the defendant-appellant there were briefs by *Harry F. Peck* and *Roger Pettit* of the *Wisconsin Civil Liberties Union,* Milwaukee, with oral argument by *Harry F. Peck.*

For the plaintiff-respondent there were briefs and oral argument by *Linda A. Leaf,* of Milwaukee.

Before Decker, C.J., Cannon, P.J., and Robert W. Hansen, Reserve Judge.

DECKER, C.J.    The only facts which we are permitted to consider are those in the record[4] and they postulate the simple question whether a claim for damages resulting from severe emotional distress can arise from a wife's determination to seek an abortion during the first trimester of her pregnancy without the advice, consent or permission of the child's father, her husband, after she falsely misrepresented and deceived him about her intention to seek an abortion.[5]

Grounding his action upon the fraudulent and intentional misrepresentation of the defendant, the plaintiff contends: "All the factors in *Alsteen v. Gehl,* 21 Wis.2d 349 (1963)[6] are present in this case for the recovery of damages for the intentional infliction of emotional distress."[7]

---

[4] *Sedlet Plumbing & Htg. v. Village Court, Ltd.,* 61 Wis.2d 479, 483, 212 N.W.2d 681 (1973).

[5] We note the absence of any allegation of special financial detriment to the plaintiff or gain to defendant.

[6] 124 N.W.2d 312.

[7] Plaintiff's brief, p. 6.

Under the *Alsteen* rule the plaintiff must demonstrate four factors to recover. The one factor critical to this case is:

2. In addition to being intentional, the defendant's conduct must be extreme and outrageous. The average member of the community must regard the defendant's conduct . . . as being a complete denial of the plaintiff's dignity as a person.[8]

Defendant's right to obtain an abortion without the consent of her spouse is preserved to her by the United States Constitution as interpreted by the United States Supreme Court in *Planned Parenthood of Missouri v. Danforth*, 428 U.S. 52, 69–71 (1976). Because we view that case as directly controlling the issues in this case, our quotation therefrom is unusually lengthy:

In *Roe* and *Doe* we specifically reserved decision on the question whether a requirement for consent by the father of the fetus, by the spouse, or by the parents, or a parent, of an unmarried minor, may be constitutionally imposed. We now hold that the State may not constitutionally require the consent of the spouse, as is specified under §3(3) of the Missouri Act, as a condition for abortion during the first 12 weeks of pregnancy. We thus agree with the dissenting judge in the present case, and with the courts whose decisions are cited above, that the State cannot "delegate to a spouse a veto power which the state itself is absolutely and totally prohibited from exercising during the first trimester of pregnancy." Clearly, since the State cannot regulate or proscribe abortion during the first stage, when the physician and his patient make that decision, the State cannot delegate authority to any particular person, even the spouse, to prevent abortion during that same period.

We are not unaware of the deep and proper concern and interest that a devoted and protective husband has in his wife's pregnancy and in the growth and development of the fetus she is carrying. Neither has this Court failed to appreciate the importance of the marital rela-

---

[8] 21 Wis.2d 349, 360, 124 N.W.2d 312 (1963).

tionship in our society. Moreover, we recognize that the decision whether to undergo or to forgo an abortion may have profound effects on the future of any marriage, effects that are both physical and mental, and possibly deleterious. Notwithstanding these factors, we cannot hold that the State has the constitutional authority to give the spouse unilaterally the ability to prohibit the wife from terminating her pregnancy, when the State itself lacks that right.

. . .

We recognize, of course, that when a woman, with the approval of her physician but without the approval of her husband, decides to terminate her pregnancy, it could be said that she is acting unilaterally. The obvious fact is that when the wife and the husband disagree on this decision, the view of only one of the two marriage partners can prevail. Inasmuch as it is the woman who physically bears the child and who is the more directly and immediately affected by the pregnancy, as between the two, the balance weighs in her favor. [Footnotes and citations omitted.]

■

We hold that the intentional exercise by a woman and her physician of her right to terminate her pregnancy as protected by the United States Constitution, cannot constitute conduct that is so extreme and outrageous that it meets the *Alsteen* requirement quoted above.

The order of the circuit court is reversed and the action is remanded with directions to enter an order dismissing the complaint upon its merits.

*By the Court.*—Order reversed and remanded with directions.