John **RAZO** and Gary **Williams,**
Appellants (Defendants Below),

v.

**STATE of Indiana,** Appellee
(Plaintiff Below).

No. 3–481A113.

Court of Appeals of Indiana,
Third District.

Feb. 25, 1982.

Rehearing Denied May 5, 1982.

---

Timothy J. Dougherty, Spangler, Jennings, Spangler & Dougherty, P. C., Merrillville, for appellant John Razo.

William T. Enslen, McHie, Enslen & Myers, Hammond, for appellant Gary Williams.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

John Razo and Gary Williams were found guilty by a jury of rape, a class B felony. They were committed to the Indiana Department of Corrections for periods of 10 years and 8 years, respectively.

This action arose out of the events which took place during the night of August 2, 1979 and early morning hours of August 3, 1979. On the evening of August 2, Razo, Williams and a third man, Richard Leon, drove to the home of the prosecutrix. She had known Razo and Williams for several years, but did not know Leon.

The prosecutrix agreed to go with them for a ride. The men were drinking beer and she asked for some marijuana, which Razo was able to purchase. The four proceeded to drive to a cemetery where Williams worked. They continued drinking and smoking. Eventually they went to an office building at the cemetery to continue their party in air-conditioned comfort.

It was during this time that the prosecutrix testified the three men held her, removed her clothing, and forcibly had sexual intercourse with her, despite her resistence. Also during this time she was struck in the face by a blow which resulted in bleeding, swelling, and a severe bruise. Photographic evidence was admitted to show bruises on her face, arms, and leg.

Razo drove the car back into town letting out Williams first, and then Leon. Once the car was near her home, the prosecutrix jumped from the car and ran. She saw a girlfriend who took her to her sister's house. She was then taken to a hospital where an examination revealed bruises on her eye, jaw, and forearms, and a rape test indicated the presence of sperm.

Razo raises the following issues on appeal:

(1) whether the verdict of the jury is contrary to law and sustained by sufficient evidence;

(2) whether the trial court erred in denying the defendants' motion for directed verdict at the conclusion of all the evidence;

(3) whether the trial court erred in denying the defendant's motion for directed verdict on the issue of jurisdiction;

(4) whether the trial court erred in restricting cross-examination of the prosecutrix;

(5) whether the trial court erred by failing to remedy the testimony of Officer Hughes regarding the past criminal record of the defendant;

(6) whether the trial court erred when it failed to read the proposed final instruction, the Rape Shield Statute; and

(7) whether the trial court erred when it refused the defendants' offer of evidence that the prosecutrix had terminated a pregnancy.

The two issues raised by Williams are incorporated in issues numbers 4 and 6 raised by Razo.

When the evidence to support a conviction is reviewed on appeal, the Court of Appeals does not reweigh the evidence or assess the credibility of the witnesses. Rather, the Court considers only the evidence most favorable to the State and all reasonable inferences drawn therefrom. The Court will not disturb the verdict if

there is substantial evidence of probative value to support each element of the offense. *Hines v. State* (1981), Ind.App., 424 N.E.2d 161.

Both defendants admitted having sexual intercourse with the prosecutrix on the night in question. However, they contend that the intercourse was voluntary on the part of all parties and that the prosecutrix was injured by Richard Leon while he and the prosecutrix were alone. Razo argues that the prosecutrix's story is improbable and fabricated. In essence, this Court is being asked to weigh the evidence and credibility of the witnesses. This we will not do. *Hines, supra.*

■ The accounts of the evening given by the prosecutrix and the defendants differ in detail. However, the Court of Appeals does not weigh conflicting evidence. That duty is left to the trier of fact. The conviction is affirmed if substantive evidence of probative value supports it. *Smith v. State* (1981), Ind.App., 427 N.E.2d 11. In the case of rape the testimony of the victim may, by itself, be sufficient to support the conviction. *Dooley v. State* (1981), Ind., 428 N.E.2d 1. Here the jury chose to believe the account given by the prosecutrix rather than Razo and Williams. In that, there is no error.

■ Razo claims the trial court erred in denying his motion for a directed verdict. If the evidence is sufficient to sustain a conviction, a motion for a directed verdict is properly denied. *Dilworth v. State* (1981), Ind., 425 N.E.2d 149.

■ It is also submitted that the trial court should have granted Razo's motion for a directed verdict on the issue of jurisdiction. Venue was proved simply by the testimony of the prosecutrix, and Razo finds her testimony to be inherently improbable.

The following testimony appears in the record:

"Q [by prosecutor] All of these events occurred in the County of Lake, State of Indiana?"

"A [by prosecutrix] Yes."

*Record* at 141.

Proper venue must be proved by the State only by a preponderance of the evidence. A claim on appeal that evidence was insufficient to support venue must be treated in the same manner as other claims of insufficient evidence. Furthermore, even circumstantial evidence, standing alone, may be sufficient to prove venue. *Morris v. State* (1980), Ind., 409 N.E.2d 608. However, here there is testimony in the record which is direct evidence on the issue and is quite sufficient. The trial court did not err in denying the motion for directed verdict on the issue of jurisdiction.

■ Razo and Williams next assert the trial court abused its discretion in restricting their cross-examination of the prosecutrix. During cross-examination of the prosecutrix, counsel attempted to attack her credibility by questioning her about the Indiana Girls' School and subsequently asking her whether or not she had ever lied to counsel.

■ It should first be noted that the scope of cross-examination lies within the sound discretion of the trial court and reversal is required only where there is a clear abuse of discretion. *Balfour v. State* (1981), Ind., 427 N.E.2d 1091. Clearly, there was no such abuse in this instance.

The first attempt was made when counsel for the defendants questioned the prosecutrix as to what school she attended at the time of the alleged rape. During cross-examination she testified she was in the process of enrolling in Lew Wallace. Counsel then posed the question, "Isn't it a fact you were just getting out of Girls' School *about that time*?" (Emphasis added.) *Record* at 144. Enrolling in a school and being released from another *at about the same time* does not necessarily present an inconsistency.

■ More importantly, however, is the fact that a collateral matter cannot be made the basis for impeachment. The test as to whether a matter is collateral is whether the party seeking to introduce it

for purposes of contradiction would be entitled to prove it as a part of his case. *Brown v. State* (1981), Ind., 417 N.E.2d 333. Clearly, where the prosecutrix was going to school had no relevance to the defendants' case.

The second attempt came when, during cross-examination of the prosecutrix, counsel asked:

> "Q Tell the jury, [prosecutrix], have you ever lied to me in any of the questions that I have ever asked you?"
>
> *Record* at 199.

Clearly the question was extremely broad.

As stated previously, the trial court has broad discretion over cross-examination. In sustaining the prosecutor's objection here, no error was committed. During the discussion held at the bench, the trial court advised counsel to narrow the question and even suggested how to do so. However, counsel chose not to pursue this line of questioning.

 During direct examination, Officer Frank Hughes addressed the statement given to the police by Razo. Officer Hughes mentioned that they discussed whether or not this was the first time Razo had been accused of rape. Defense counsel registered a general objection at that time. Now Razo is arguing that because the trial court failed to admonish the jury, reversible error was committed.

To begin with, an objection which does not specify the grounds for the objection does not preserve any error for appeal. *Allen v. State* (1981), Ind., 428 N.E.2d 1237. Furthermore, Razo failed to request any cure for the testimony and therefore, no error arose from the trial court's failure to admonish the jury. *Cobb v. State* (1980), Ind., 412 N.E.2d 728.

 Razo and Williams next contend the trial court erred in failing to read the Rape Shield Statute [1] as a final instruction to the jury. However, the proposed instruction was tendered orally and not in writing. Failure to tender an instruction in

writing waives the error, if any, of not giving the requested instruction. *Begley v. State* (1981), Ind., 416 N.E.2d 824.

Had the Rape Shield Statute instruction been properly tendered, the trial court would still have been correct in denying it. The purpose of the Rape Shield Statute is to exclude evidence of the victim's past sexual conduct. No evidence of this prosecutrix's past sexual conduct was introduced at trial. Therefore, to allow such an instruction with no evidence to base it upon would only encourage prejudicial speculation by the jury. It would allow defense counsel, by way of a back door approach, to implant in the minds of the jury the exact poison which the Statute is designed to avoid.

Finally, Razo argues the trial court erred in refusing the defendants' offer of evidence that the prosecutrix had had an abortion. Although no Indiana court has decided the precise issue, Razo contends that evidence of abortion should not be excluded under the Rape Shield Statute. He argues that such evidence indicates significant facts about the character of the prosecutrix which the jury should consider.

> "Lack of regard for human life is in the mind of many an indication of a woman's immorality."
>
> Reply brief of John Razo, appellant, at p. 18.

In *Moore v. State* (1979), Ind., 393 N.E.2d 175, a case where the Indiana Supreme Court dealt with the issue of a rape victim's pregnancy, Justice Hunter set forth the purpose of Indiana's Rape Shield Statute as being: "to 'shield victims of sex crimes from a general inquiry into a history of their sexual conduct' and to keep these victims from feeling that they are on trial." (Citations omitted.) 393 N.E.2d at 178.

 A pregnancy which has been aborted can only be the result of "past sexual conduct." This is what the Rape Shield Statute proscribes. The statute has been

1. IC 1971, 35-1-32.5-1—2 (Burns 1979 Repl.).

held to exclude evidence of pregnancy[2] and should also exclude evidence of termination of a pregnancy. Any reference to a prior abortion inherently contains a reference to prior sexual conduct.

 Razo alleges an abortion is an indication of a woman's immorality. Aside from the fact that the prosecutrix's abortion is completely irrelevant to the charge before the jury, since 1973, abortion has been legal. Within the first trimester of pregnancy, it is a decision to be made by the woman and her physician.[3] It is precisely the sort of attitude expressed in the quote from Razo's reply brief which the Rape Shield Statute was designed to prevent. The victim's sexual morality is not on trial and should not be considered by the jury.

Having found no reversible error, the convictions of both defendants are affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.

---

2. *Moore, supra.*

3. *Roe v. Wade* (1973) 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147.