Jennifer Ann CONN,
Petitioner–Appellant,

v.

Erin Andrew CONN,
Respondent–Appellee.

No. 73A01–8806–CV–201.

Court of Appeals of Indiana,
First District.

July 12, 1988.

---

Richard A. Waples, Indiana Civil Liberties Union, William E. Marsh, Indianapolis, for petitioner-appellant.

James Bopp, Jr., Richard E. Coleson, Brames, McCormick, Bopp & Abel, Terre Haute, Roger Wm. Bennett, Lafayette, John P. Worth, Rushville, for respondent-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Petitioner-appellant, Jennifer Ann Conn (Jennifer), has perfected an interlocutory appeal from an order entered by the Shelby circuit Court granting a temporary injunction in favor of her husband, Erin Andrew Conn (Erin), enjoining her from obtaining an abortion.

We reverse.

## STATEMENT OF THE FACTS

Jennifer, age 19, is married to Erin, but there is pending in the Shelby Circuit Court a petition for dissolution of marriage filed by Jennifer. At the time of the entry of the temporary injunction on June 27, 1988, Jennifer was approximately six weeks pregnant and was preparing to have an abortion. Erin filed a petition for injunction in the dissolution proceedings seeking to prevent Jennifer from obtaining the abortion. The trial court, after an evidentiary hearing, granted a temporary injunction, but at the same time certified the order for an interlocutory appeal under Ind. Rules of Procedure, Appellate Rule 4(B)(6). The trial court made special findings of fact upon which it entered conclusions of law. In its conclusions of law the trial court stated the reasons for its action as follows:

> A husband who has fathered the fetus being carried by his wife has rights in the fetus grounded in Indiana Common Law and in the 14th and 9th amendments to the United States Constitution. Those rights, in the face of his wife's desire for an abortion, must be balanced against the wife's constitutional rights to an abortion.

*Record* at 89.

## ISSUES

Jennifer presents three issues on appeal, but because of our decision on Issue I, which is fundamental in nature, we need not address Issues II and III. Issue I is as follows:

I. Whether the court's order enjoining Jennifer from obtaining an abortion violates her federal and state constitutional rights.

We hold that it does.

## DISCUSSION AND DECISION

Dispositive of this case are the decisions of the Supreme Court of the United States in *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, and *Planned Parenthood of Central Missouri v. Danforth* (1976), 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788. These cases, as well as others cited, contain exhaustive discussions of the legal, moral, medical, historical, psychiatric, ethical, and religious aspects of abortion. We see no point in repeating those discourses here, but the reader is referred to those cases for further edification if he so desires. We will confine our discussion to the legal holdings stated therein.

In *Roe v. Wade* the Supreme Court declared state statutes proscribing abortions in the first trimester unconstitutional. It concluded as follows:

> A state criminal abortion statute of the current Texas type, that excepts from criminality only a *life-saving* procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is

violative of the Due Process Clause of the Fourteenth Amendment.

(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

(c) For the stage subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother.

410 U.S. at 164–65, 93 S.Ct. at 732, 35 L.Ed.2d at 183–84.

*Danforth* involved a suit challenging the constitutionality of a provision in a Missouri statute which required spousal consent before a woman could obtain an abortion during the first twelve weeks of pregnancy. In striking down the provision as being unconstitutional, the court stated:

> In *Roe* and *Doe* we specifically reserved decision on the question whether a requirement for consent by the father of the fetus, by the spouse, or by the parents, or a parent, of an unmarried minor, may be constitutionally imposed. 410 U.S., at 165 n. 67, 93 S.Ct., at 733. We now hold that the State may not constitutionally require the consent of the spouse, as is specified under § 3(3) of the Missouri Act, as a condition for abortion during the first 12 weeks of pregnancy. We thus agree with the dissenting judge in the present case, and with the courts whose decisions are cited above, that the State cannot "delegate to a spouse a veto power which the state itself is absolutely and totally prohibited from exercising during the first trimester of pregnancy." [*Planned Parenthood of Central Missouri v. Danforth,*]

392 F.Supp. [1362], at 1375 [(E.D.Mo.1975)]. Clearly, since the State cannot regulate or proscribe abortion during the first stage, when the physician and his patient make that decision, the State cannot delegate authority to any particular person, even the spouse, to prevent abortion during that same period.

We are not unaware of the deep and proper concern and interest that a devoted and protective husband has in his wife's pregnancy and in the growth and development of the fetus she is carrying. Neither has this Court failed to appreciate the importance of the marital relationship in our society. See, e.g., *Griswold v. Connecticut,* 381 U.S. 479, 486, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965); *Maynard v. Hill,* 125 U.S. 190, 211, 8 S.Ct. 723, 729, 31 L.Ed. 654 (1888).[10] Moreover, we recognize that the decision whether to undergo or to forego an abortion may have profound effects on the future of any marriage, effects that are both physical and mental, and possibly deleterious. Notwithstanding these factors, we cannot hold that the State has the constitutional authority to give the spouse unilaterally the ability to prohibit the wife from terminating her pregnancy, when the State itself lacks that right. See *Eisenstadt v. Baird,* 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972).[11]

It seems manifest that, ideally, the decision to terminate a pregnancy should be one concurred in by both the wife and her husband. No marriage may be viewed as harmonious or successful if the marriage partners are fundamentally divided on so important and vital an issue. But it is difficult to believe that the goal of fostering mutuality and trust in a marriage, and of strengthening the marital relationship and the marriage institution, will be achieved by giving the husband a veto power exercisable for any reason whatsover or for no reason at all. Even if the State had the ability to delegate to the husband a power it itself could not exercise, it is not at all likely that such action would further, as the

District Court majority phrased it, the "interest of the state in protecting the mutuality of decisions vital to the marriage relationship." 392 F.Supp., at 1370.

We recognize, of course, that when a woman, with the approval of her physician but without the approval of her husband, decides to terminate her pregnancy, it could be said that she is acting unilaterally. The obvious fact is that when the wife and the husband disagree on this decision, the view of only one of the two marriage partners can prevail. Inasmuch as it is the woman who physically bears the child and who is the more directly and immediately affected by the pregnancy, as between the two, the balance weighs in her favor. *Cf. Roe v. Wade,* 410 U.S., at 153, 93 S.Ct., at 726.

10 We deal with a right of privacy older than the Bill of Rights—older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions. *Griswold v. Connecticut,* 381 U.S., at 486, 85 S.Ct., at 1682.

11 As the Court recognized in *Eisenstadt v. Baird,* "the marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup. If the right of privacy means anything, it is the right of the *individual,* married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." 405 U.S., at 453, 92 S.Ct., at 1038 (emphasis in original).

The dissenting opinion of our Brother WHITE appears to overlook the implications of this statement upon the issue whether § 3(3) is constitutional. This section does much more than insure that the husband participate in the decision whether his wife should have an abortion. The State, instead, has determined that the husband's interest in continuing the pregnancy of his wife always outweighs any interest on her part in terminating it irrespective of the condition of their marriage. The State, accordingly, has granted him the right to prevent unilaterally, and for whatever reason, the decision to terminate her pregnancy. This state determination not only may discourage the consultation that might normally be expected to precede a major decision affecting the marital couple but also, and more importantly, the State has interposed an absolute obstacle to a woman's decision that *Roe* held to be constitutionally protected from such interference.

428 U.S. at 69–71, 96 S.Ct. at 2841–42, 49 L.Ed.2d at 804–06.

Indiana has no statute proscribing abortion in the first trimester, nor does it have a statute requiring spousal consent. No case decided subsequent to *Danforth* is cited by Erin which requires spousal consent before a wife may obtain an abortion. Instead, Erin's arguments are philosophical and moral in nature. His primary argument is that a trial court may resort to a case by case balancing of the rights of a husband to procreate and have children against the right of a wife to have an abortion. In support of that argument, he points to evidence contained in the record which demonstrates that he would be a responsible father who is capable of and would adequately support the child. He also cites cases which hold that a husband has fundamental rights to procreate and rights in children that have been born and are living. He claims that those fundamental rights involve unborn children as well as children born and living. Finally, he claims that the holding in *Danforth* does not preclude this court from resorting to a balancing test of the competing rights of the husband and wife. In that argument he attempts to distinguish *Danforth.*

Erin does not contend that *Roe* and *Danforth* have been overruled, distinguished, or modified by subsequent Supreme Court decisions. Quite to the contrary, the Supreme Court in *Thornburgh v. American College of Obstetricians and Gynecologists* (1986), 476 U.S. 747, 759, 106 S.Ct. 2169, 2178, 90 L.Ed.2d, 779, 792 stated:

> Again today we affirm the general principles laid down in *Roe* and *Akron* [*v. Akron Center for Reproductive Health Inc.,* 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983)].

In addition, the decisions in *Roe* and *Danforth* have been mentioned uncritically in the following Indiana cases: *Razo v. State* (1982), Ind.App., 431 N.E.2d 550; *Indiana Hospital Licensing Council v. Women's Pavilion of South Bend, Inc.* (1981), Ind.

App., 420 N.E.2d 1301; *Unwed Father v. Unwed Mother* (1978), 177 Ind.App. 237, 379 N.E.2d 467.

The authorities cited and argued by Erin are either not on point or antedate *Roe* and *Danforth*. Although the philosophical, moral, ethical, and religious controversy surrounding abortion remains, the legal issues which govern the facts of this case have been, at least for the present, set to rest by those decisions and their progeny. The language and holding in *Danforth* is unambiguous and unqualified. A married woman has an unconditioned right to have an abortion in the first trimester. She is not required to seek and obtain the consent of her husband. Erin's interpretation of *Roe* and *Danforth* is strained. *Danforth* in plain language struck down the balancing argument presented here, and even used the term "for any reason" in holding that a husband has no right to veto the wife's decision to have an abortion. We need not present citation of authority to demonstrate that if a state legislature lacks the power to delegate to a husband the right to veto his wife's decision to obtain an abortion by direct statutory enactment, then certainly a court under the guise of some nebulous common law concept, cannot exceed the power denied the legislature and grant the husband the right.

Erin's argument amounts to an invitation to us to distinguish, modify, or diminish the clear holdings in those cases. Such action on our part would be presumptuous and without the scope of our privilege. Although the moral concepts of abortion, as well as the assumption by the Supreme Court of the right to establish social policy, a function ordinarily reserved to legislative bodies, are troublesome to some members of this court, such personal reservations are irrelevant to the opinion here. Our duty consists only of applying the law as announced by the Supreme Court.

Pursuant to the express holding in *Danforth*, we hold that Erin has no right to veto Jennifer's decision to obtain an abortion as such decision concerns only her.

Thus, the trial court erred in granting the temporary injunction.

For the above reasons this cause is reversed and the trial court is ordered to vacate the temporary injunction. Inasmuch as we have held that Erin has no right under any facts of this case to veto Jennifer's decision to obtain an abortion, the trial court is further ordered to dismiss all proceedings related to the abortion issue.

Judgment reversed.

RATLIFF, C.J., and ROBERTSON, J., concur.