In re the Marriage of Jennifer Ann CONN, Petitioner–Appellant,

v.

Erin Andrew CONN, Respondent–Appellee.

No. 73S01–8807–CV–631.

Supreme Court of Indiana.

July 15, 1988.

Rehearing Denied July 18, 1988.

Richard A. Waples, William E. Marsh, Ind., for petitioner-appellant.

James B. Marsh, Jr., Terre Haute, Roger W. Bennett, Lafayette, John O. Worth, Rushville, for respondent-appellee.

## ORDER

### GRANTING PETITION FOR TRANSFER

THE COURT now grants Appellee's "Petition for Transfer and Expedited Appeal."

/s/ Roger O. DeBruler
ROGER DeBRULER
Acting Chief Justice for the Court

SHEPARD, C.J., and GIVAN, PIVARNIK, and DICKSON, JJ., concur.

DeBRULER, J., dissents to the granting of transfer.

## ORDER

### AFFIRMING THE COURT OF APPEALS

THE COURT, having granted Appellee's "Petition for Transfer and Expedited Appeal," now adopts the opinion of Judge Neal written on behalf of the unanimous First District of the Court of Appeals and affirms its judgment. Appellate Rule 11(B)(3), Ind. Rules of Procedure.

/s/ Roger O. DeBruler
ROGER O. DeBRULER
Acting Chief Justice

SHEPARD, C.J., and DeBRULER, GIVAN, and DICKSON, JJ., concur.

PIVARNIK, J., dissents with opinion.

PIVARNIK, Justice, dissenting.

I respectfully dissent from the position taken by the majority in this case. The majority has granted transfer from the court of appeals and summarily affirmed. The legal effect of this pursuant to our rules is to adopt the court of appeals opinion as our own. By doing so, this court has taken a position I perceive to be more social than legal, and sets a standard in our society I cannot endorse. With fullest regard and respect for my colleagues on this court and the court of appeals, I recognize the ultimate decision on issues such as this rests with the United States Supreme Court, and we as judges are bound under the law to recognize the judgments of that honorable court and to find it to be the law even though we might personally disagree with it for whatever reason. Judge Neal, speaking for a unanimous court, very judiciously acknowledged this when he stated:

Although the moral concepts of abortion, as well as the assumption by the Supreme Court of the right to establish social policy, a function ordinarily reserved to legislative bodies, are troublesome to some members of this court, such personal reservations are irrelevant to the opinion here. Our duty consists only of applying the law as announced by the Supreme Court.

*Conn v. Conn* (1988), Ind.App., 525 N.E.2d 612, 616.

I agree with Judge Neal's conclusion. However, I also believe this court as the highest judicial tribunal of this State is not without responsibility to face the issues presented by our citizens and respond to them in a judicial manner. It is my view the fact situation in this case takes the issue beyond the holdings, relied on by the majority, in *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 and *Planned Parenthood of Missouri v. Danforth*, (1976), 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788. As I will demonstrate, the facts in this case take this issue to its

ultimate position by holding that Jennifer Conn had an absolute and constitutional right to destroy a life created by her and her husband in marriage, for any reason or, in fact, for no reason, and that no one, including the husband, has a right to even *inquire* into her motives or into the wisdom or advisability of such action. The opinion this court hands down today holds that Erin Conn has no right under any facts to veto Jennifer's decision and the trial court is ordered to dismiss all proceedings related to the abortion issue. This finality seems to infer it is unthinkable for a court to even consider this issue or leave it of record.

The trial court here did not enter a permanent injunction ordering Jennifer Conn to carry this child to term. Neither was it suggested the husband has an unfettered veto power over his wife's desire to abort the fetus. The court found both parties have some rights in making this decision and enjoined the wife from aborting the fetus until the parties could be heard and a judicial determination made. This was done when there was plenty of time left in the first trimester. In *Danforth*, the United States Supreme Court found there is a balancing of rights between the parties and further said that because the wife is the one who bears the child and, between the two, is more directly and immediately affected by the pregnancy, the balance weighs in her favor. The question remains whether a majority of that Court intended to foreclose the issue to the extent it meant to say in every case, under any facts and circumstances, the husband may not even inquire into the wife's decision to take this step, and cannot bring it into court to be decided as all other issues in our society are decided, including those rights and responsibilities in marriage relationships. As the majority opinion points out in *Roe*, the Supreme Court declared state statutes proscribing abortions in the first trimester unconstitutional. In regard to the first trimester, it found:

1. A state criminal abortion statute of the current Texas type, that excepts from criminality only a *life-saving* procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourteenth Amendment.

(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

*Roe,* 410 U.S. at 164, 93 S.Ct. at 732.

In *Danforth*, the Supreme Court faced an issue challenging the constitutionality of a provision in a Missouri statute which required the consent of a husband before a woman could obtain an abortion during the first twelve weeks of the pregnancy. The Court stated the issue:

In *Roe* and *Doe* we specifically reserve decision on the question whether a requirement for consent by the father of the fetus, by the spouse, or by the parents, or a parent, of an unmarried minor, may be constitutionally imposed. 410 U.S. at 165, n. 67, 93 S.Ct. at 733 [n. 67]. We now hold that the state may not constitutionally require the consent of the spouse as is specified under § 3(3) of the Missouri Act, as a condition for abortion during the first 12 weeks of pregnancy.

*Danforth*, 428 U.S. at 69, 96 S.Ct. at 2841.

The thrust of the *Danforth* majority was that the effect of § 3(3) of the Missouri Act gave the husband a veto power exercisable for any reason or no reason at all. Clearly the Court said a state statute cannot stand that gives the husband the absolute power to foreclose the conflict by withholding his approval. In fact, as argued in the briefs, the wife and her doctor could not finalize the decision without first having the husband's consent even if the husband's whereabouts were unknown and obtaining consent impossible. The Court then stated:

We recognize, of course, that when a woman, with the approval of her physician but without the approval of her husband, decides to terminate her pregnancy, it could be said that she is acting unilaterally. The obvious fact is that when the wife and the husband disagree on this decision, the view of only one of

the two marriage partners can prevail. Inasmuch as it is the woman who physically bears the child and who is the more directly and immediately affected by the pregnancy, as between the two, the balance weighs in her favor. *Cf. Roe v. Wade,* 410 U.S. at 153, 93 S.Ct. [at 726].

*Danforth,* 428 U.S. at 71, 96 S.Ct. at 2842. Is this language so conclusive it contemplates a wife will have an absolute veto power over any objections or considerations raised by the husband? Justices Stewart and Powell wrote a separate concurring opinion covering several issues in the case, and with reference to this issue stated:

As to the provision of the law that requires a husband's consent to an abortion, § 3(3), the primary issue that it raises is whether the State may constitutionally recognize and give effect to a right on his part to participate in the decision to abort a jointly conceived child. This seems to me a rather more difficult problem than the Court acknowledges. Previous decisions have recognized that a man's right to father children and enjoy the association of his offspring is a constitutionally protected freedom. See *Stanley v. Illinois,* 405 U.S. 645, [92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)]; *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535 [62 S.Ct. 1110, 86 L.Ed. 1655 (1942)]. But the Court has recognized as well that the Constitution protects "a *woman's* decision whether or not to terminate her pregnancy." *Roe v. Wade, supra* [410 U.S.] at 153 [93 S.Ct., at 727], (emphasis added). In assessing the constitutional validity of § 3(3) we are called upon to choose between these competing rights. I agree with the Court that since "it is the woman who physically bears the child and who is the more directly and immediately affected by the pregnancy ... the balance weighs in her favor." *Ante* [428 U.S.] at 71 [96 S.Ct., at 2842].

*Danforth,* 428 U.S. at 90, 96 S.Ct. at 2850. Justice White wrote a dissenting opinion joined in by Chief Justice Berger and Justice Rehnquist. In his dissent in regard to the issue before us, Justice White provided:

*Roe v. Wade, supra,* [410 U.S.], at 163 [93 S.Ct., at 731], holds that until a fetus becomes viable, the interest of the State in the life or potential life it represents is outweighed by the interest of the mother in choosing "whether or not to terminate her pregnancy." 410 U.S., at 153 [93 S.Ct., at 727]. Section 3(3) of the Act provides that a married woman may not obtain an abortion without her husband's consent. The Court strikes down this statute in one sentence. It says that "since the State cannot ... proscribe abortion ... the State cannot delegate authority to any particular person, even the spouse, to prevent abortion...." *Ante* [428 U.S.], at 69 [96 S.Ct., at 2841]. But the State is not—under § 3(3)—delegating to the husband the power to vindicate the *State's* interest in the future life of the fetus. It is instead recognizing that the husband has an interest of his own in the life of the fetus which should not be extinguished by the unilateral decision of the wife.[1] It by no means follows, from the fact that the mother's interest in deciding "whether or not to terminate her pregnancy" outweighs the *State's* interest in the potential life of the fetus, that the husband's interest is also outweighed and may not be protected by the State. A father's interest in having a child—perhaps his only child—may be unmatched by any other interest in his life. See *Stanley v. Illinois,* 405 U.S. 645, 651 [92 S.Ct. 1208, 1212, 31 L.Ed.2d 551], (1972), and cases there cited. It is truly surprising that the majority finds in the United States Constitution, as it must in order to justify the result it reaches, a rule that the State must assign a greater value to a mother's decision to cut off a potential human life by abortion than to a father's decision to let it mature into a live child. Such a rule cannot be found there, nor can it be found in *Roe v. Wade, supra.* These are matters which a State should be able to decide free from the suffocating power of the federal judge, purporting to act in the name of the Constitution.

In describing the nature of a mother's interest in terminating a pregnancy, the Court in *Roe v. Wade* mentioned only the post-birth burdens of rearing a child, 410 U.S., at 153, [93 S.Ct., at 726], and rejected a rule based on her interest in controlling her own body during pregnancy. *Id.*, at 154 [93 S.Ct., at 727]. Missouri has a law which prevents a woman from putting a child up for adoption over her husband's objection, Mo.Rev.Stat. § 453.030 (1969). This law represents a judgment by the State that the mother's interest in avoiding the burdens of child rearing do not outweigh or snuff out the father's interest in participating in bringing up his own child. That law is plainly valid, but no more so than § 3(3) of the Act now before us, resting as it does on precisely the same judgment.

*Danforth,* 428 U.S. at 92–94, 96 S.Ct. at 2851–2853.

The trial judge concluded in his findings that this issue was a viable one for a trial court to consider, as Justice White has indicated in his dissent, recognizing that the balance weighs in the wife's favor in considering the issue. He even stated he considered there to be a presumption the wife had the better of the argument and the husband would need to overcome that presumption. The *Danforth* majority indicated when a woman "with the approval of her physician but without the approval of her husband" makes a decision to terminate her pregnancy the competing interest of the parties is presented. The majority does not even require or contemplate that a physician will be involved in the wife's decision. There was no representation here the wife had even consulted a physician in making her decision. In fact, she refused under a claim of right of privacy to give any reason for her desire for an abortion other than to state she wanted one. Erin Conn testified Jennifer told him unless he agreed to an adoption of the child once born, she would abort, and if there was any chance of his getting custody of the child once born, she would have an abortion. She did not tell her husband she needed an abortion for medical, emotional, or psychological reasons. There are other conflicts

between these parties, as might be expected, and the trial court, in entering the temporary injunction, indicated the issues the court would weigh in determining whether a permanent injunction should ultimately issue. Those issues were:

(a) whether the Wife has consulted with a physician, and if so, is he or she in agreement with Wife's decision to abort;

(b) the likelihood of the child being born with grave mental or physical defects;

(c) should Wife be ordered not to have an abortion whether she would likely suffer any harm—medical, emotional, psychological, or otherwise;

(d) whether the continuation of the pregnancy and childbirth will likely interfere with Wife's education, employment, or employment opportunities;

(e) whether an abortion will likely cause any harm to Husband, either emotionally, psychologically, or otherwise;

(f) whether Wife is sincere in her desire for an abortion, and whether Husband is sincere in his desire that Wife not terminate the pregnancy;

(g) whether the Wife will properly care for herself during the pregnancy;

(h) how the expenses associated with prenatal care and delivery of the child will be paid;

(i) whether the pregnancy, followed by the birth of a child, will cause financial hardship on either Husband or Wife, or their respective families;

(j) whether the Husband is capable of fathering another child; and

(k) whether the Husband is likely to be capable, and willing, to rear the child upon birth.

We are not faced here with a state statute that mandates the determination of every case by giving absolute veto power to one party over the decision of the other regardless of the facts and circumstances. This case arises from the attempt of a trial judge to make a decision involving one of the issues presented in a dissolution case in which he has full jurisdiction over all issues arising from and involved in the marriage

relationship of these two people. It falls on him to hear the facts and apply the law to make a distribution of the parties' property and to provide for the care, custody, and support of the minor children. In so doing he can place the custody of the child with either party, and provide for support money and visitation to be adjusted with the other. Upon a proper finding, he can take the child from both the parties and place it with an appropriate agency, terminating their parental rights forever, and provide for the child's adoption to unknown persons to care for it. He must provide for any unborn child conceived during the marriage. The law presumes the husband to be the father of the wife's conception; that presumption can be overcome, if at all, by a showing of total non-access or total impotency. A finding that the wife conceives, even in the first trimester, fixes a responsibility on the husband to care for that child in the same manner he cares for those already born and in existence at the time of the dissolution of the marriage. It is incomprehensible to me this same trial court is foreclosed from even considering the question of whether the wife should be permitted to destroy this creation of both parties in the marital relationship merely because she wants to. At least up to now, no right has been determined to be absolute. Every right must yield and respond to rights of others and to the stability of society, in the marriage relationship and all others. In making his determinations in the dissolution action the trial court has a right to hear facts and determine whether one of the parties has committed adultery, uses drugs, uses alcohol excessively, or is in any way unstable in the management of his home and his life.

Counsel for Jennifer Conn cautions, or perhaps threatens, us that should we find this question to be a viable one to be decided by our courts, it would cause married women to simply withhold the fact of pregnancy from their husbands and take from them the opportunity to discuss the issue. This is a social, not a legal proposition, that has no place in this action. Further, it tends to polarize the parties and place them in opposite camps, in conflict with each other. This is not only lacking in legal principle but it is in conflict with all moral, philosophical, and religious considerations of our society which have been discussed at length in decisions cited herein. I cannot but believe that one of the tenets of this society is that a marriage is a union between a man and a woman that is not characterized by polarization but represents the highest ideal and institution of unity and cooperation. Marriage forms the basic unit of the structure of our society, and indeed all civilized societies in the history of the world. Opinions of courts of all levels and of all jurisdictions as well as enactments of legislatures throughout the history of this nation, to the extent that this opinion would be heavily burdened to cite them all, have recognized the sanctity of the marriage union and the importance of preserving it. The position taken by the majority would be counter to that preservation and I cannot endorse it. I dissent.

## ORDER

### REGARDING MOTION FOR STAY

With respect to Appellee's Motion for Stay, we recognize that the judgment of this Court is subject to review by the Supreme Court of the United States. In order to maintain the status quo so as to preserve this right, the trial court is ordered to vacate its temporary injunction effective 4:30 p.m. Friday, July 22, 1988.

/s/ Roger O. DeBruler
ROGER O. DeBRULER
Acting Chief Justice for the Court

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., dissents and votes to order temporary injunction vacated immediately.

PIVARNIK, J., dissents and votes to continue the temporary injunction.

## ORDER

### DENYING "PETITION FOR REHEARING"

THIS COURT, having heretofore entered an Order affirming an opinion of the Court

of Appeals, involving a first trimester pregnancy, now hereby DENIES Appellee's Petition for Rehearing.

/s/ Randall T. Shepard
RANDALL T. SHEPARD
Chief Justice of Indiana

All Justices concur, except PIVARNIK, J., who votes to grant the Petition for Rehearing.

GIVAN, J., who is not participating.