OPINION OF THE COURT
Lewis R. Friedman, J.
This habeas corpus proceeding attempts an unprecedented and paradoxical use of the "Great Writ” — to restrain travel.
Petitioner (Husband) asks the court to determine the custody of an unborn child. The facts as alleged are simple. The parties are married, but have marital difficulties. Respondent (Wife) is pregnant and expecting a child in September 1993. Wife may be planning to leave New York City in the immediate future to go to Binghamton, New York. Petitioner, in aid of his custody petition, seeks to have this court enjoin his pregnant Wife from leaving New York City.
The respondent Wife contends that habeas corpus is unavailable and that she has various constitutionally protected rights to travel.
Habeas corpus existed at common law long before the founding of this Nation and was incorporated in this country by both State and Federal constitutional law. The writ requires that a detained person be brought before the court solely in order to determine the legality of the detention (cf, People ex rel. Tatra v McNeill, 19 AD2d 845, 846). As an obvious threshold matter a petitioner is required to show that there is a detained "person” (CPLR 7002). However, this court has been unable to locate any New York case which has held a fetus to be a "person” under CPLR 7002.
Petitioner contends that the court may use its broad powers of interpretation to expand the definition of "persons” for habeas corpus purposes because a fetus has been granted certain legal rights. The cases cited by petitioner are, however, inapposite. There is a well-established line of authority holding that a legal representative may be appointed for a fetus, because, historically, "the law has indulged in the fiction that for the purpose of inheritance or other devolution of property, a child en ventre sa mere, while not a 'person’ has certain legal rights contingent upon being born alive” (Matter of Thomas, 118 Misc 2d 456, 457; Endresz v Friedberg, 24 NY2d 478, 485). Those property cases stem from a common-law doctrine (unrelated to the dispute between science and theology concerning when "life” commences) that legal fictions will be employed only "in so far as is necessary to protect the *581 child’s own rights” (Matter of Roberts, 158 Misc 698, 699). That same principle of protecting the child’s rights by protecting the fetus has been applied in tort law. Thus an infant may recover for injuries committed to it in utero (Woods v Lancet, 303 NY 349, 357; cf., Albala v City of New York, 54 NY2d 269, 272).
However those cases and their progeny do not provide guidance on the question before this court since the question of custody of the child ultimately born is not the type of property right of the fetus considered by the common-law cases. The public policy which underlies those cases has nothing to do with whether the court can exercise habeas corpus jurisdiction here.
Petitioner relies heavily on Matter of Siveke v Keena (110 Misc 2d 4) where the Supreme Court, Suffolk County, determined that habeas corpus could be used in lieu of article 77 of the Mental Hygiene Law to determine the propriety of detention of an ill person. The court’s language about habeas corpus in general was clearly dictum since its ultimate decision turned on Supreme Court’s plenary general jurisdiction and the case involved a traditional habeas corpus issue— whether a patient was illegally detained.
Similarly, cases such as Matter of Gloria C. v William C. (124 Misc 2d 313) offer no guidance. There, the Family Court found that a fetus was a "person” for which an order of protection may be issued. The court extensively analyzed situations where a fetus is given protection. Most instances of public policy are stated in statutes (e.g., Penal Law § 125.00 [which applies to viable 24-week-old fetuses]; or EPTL 2-1.3 [a] [2] [which applies to dispositions of property]). "[W]hen our Legislature enacts laws concerning unborn children, it says so explicitly” (People v Morabito, 151 Misc 2d 259, 264).
Also cases such as Roe v Wade (410 US 113) relied on by respondent, which hold that a fetus is not protected as a "person” under the Fourteenth Amendment, do not address the common-law and statutory framework at issue here.
The court must look to the purpose of habeas corpus to determine the jurisdictional question of whether it may be used here. The "Great Writ” is a powerful, broad tool subject to expansive interpretations, by which court intervention may be obtained to resolve detention issues. But, is there a detention issue that may be resolved where the alleged "person” is a fetus?
*582 In an analogous area, the courts have consistently held that spouses or putative fathers have no interest in a fetus sufficient either to require or prevent an abortion. (See, Conn v Conn, 525 NE2d 612 [Ind Ct App], affd and opn below adopted 526 NE2d 958 [Ind], cert denied 488 US 955 [1988]; Coleman v Coleman, 57 Md App 755, 471 A2d 1115, cert denied 298 Md 353, 469 A2d 1274 [1984]; Doe v Doe, 365 Mass 556, 314 NE2d 128 [1974]; Doe v Smith, 527 NE2d 177 [Ind 1988]; Rothenberger v Doe, 149 NJ Super 478, 374 A2d 57 [Ch Div 1977]; Jones v Smith, 278 So 2d 339 [Fla 1973], cert denied 415 US 958 [1974]; see also, Przybyla v Przybyla, 87 Wis 2d 441, 275 NW2d 112 [Ct App 1978] [woman’s exercise of right to terminate her pregnancy without consent of husband cannot support recovery by husband for intentional infliction of emotional distress]; Planned Parenthood of Mo. v Danforth, 428 US 52, 69 [1976]; Planned Parenthood of S.-E. Pa. v Casey, 505 US —, 112 S Ct 2791, 2826-2831 [1992].)
This is not an abortion case and this court will not treat it as one. However, what the abortion cases have made clear is that a husband does not have a protected interest in the potential life of the child (Planned Parenthood of Mo. v Danforth, supra, 428 US, at 69). As the Supreme Court noted in Casey "[a] State may not give to a man the kind of dominion over his wife that parents exercise over their children” (505 US, at —, 112 S Ct, at 2831, supra).
The issue remains whether habeas corpus should be expanded into a hitherto uncharted area because there is some compelling State interest to be protected. It is well established that the State has a parens patriae interest in the custody of children. Both extensive case law and statutory provisions govern the rules applicable to custody proceedings. They are of nationwide interest and have both State and Federal implications (see, e.g., 28 USC § 1738A [Parental Kidnaping Prevention Act]; and Domestic Relations Law §§ 75-a — 75-z [Uniform Child Custody Jurisdiction Act (UCCJA)]).
Nothing in the law of this State even suggests that the State has any interest in the custody of a fetus. Indeed, Domestic Relations Law § 70 and its progenitors which permit habeas corpus in custody matters is limited to custody of "a minor child.”
Obviously petitioner is seeking custody of the child to be born in September since his custody of the fetus at the present is physically impossible. So the papers here really present the question of whether petitioner can keep respondent in this *583 county long enough to permit this court to resolve the custody of the eventual child. Simply put, this action seeks to preserve New York County venue, if Wife moves to Binghamton, or New York State jurisdiction if she moves elsewhere. But, what interest does this State have in restricting Wife’s right to travel solely to give Husband his choice of venue? This court sees none. Without doubt everyone has a constitutionally protected right to travel without State interference. Unlike a person who is incarcerated or under other restraint Wife has that liberty of movement. Clearly "[w]omen do not lose their constitutionally protected liberty when they marry” (Planned Parenthood of S.-E. Pa. v Casey, supra, 505 US, at —, 112 S Ct, at 2831) or when they are pregnant. A party can, and should, have no right to compel anyone to remain in this county solely to permit a court to have subject matter jurisdiction in the future. Similarly this court can see no interest in retaining New York State jurisdiction over the ultimate custody question if Wife were to move elsewhere. The UCCJA, adopted by every State, defines when a State may exercise custody jurisdiction. The key definition, of "home state”, makes it clear that the Uniform Act was designed to apply only to children who have been born. For a child under six months of age "home state means the state in which the child has resided with any of such persons [seeking custody] for a majority of the time since birth” (Domestic Relations Law § 75-c [5]). The Legislatures of every State sought to protect the State’s custody jurisdiction only for those children who have been born. There is no reason that this court should reach any other result.
Since there is no reason to "reach out” for broader jurisdiction in the courts there is no reason for this court to expand the habeas corpus jurisdiction of the courts.
There is no basis for this proceeding. The writ is dismissed.
Wife seeks counsel fees relying on Domestic Relations Law § 237 (b). The statute clearly authorizes legal fees "as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties.” There is not enough information presented to determine the circumstances of the parties. Both parties are physicians and no financial data is submitted. If Wife is advised to pursue the issue in this proceeding, this court will entertain a properly supported application for legal fees.